FLEISCHMAN CO. v. MURRAY et al.

(Circuit Court, D. South Carolina. January 29, 1908.)

1. COURTS—FEDERAL COURTS—INJUNCTION—"COURTS OF A STATE."

The South Carolina Dispensary Commission created by Sess. Laws 1907, p. 835, No. 402, for the purpose of winding up the South Carolina State Dispensary, disposing of its property, and paying its debts, is not a "court of a state" within Rev. St. § 720 (U. S. Comp. St. 1901, p. 581), providing that an injunction shall not be granted by any court of the United States to stay proceedings in any "court of a state" except in cases where

such injunction may be authorized by any law relating to proceedings in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1689–1690.]

2. STATES—OFFICERS—COMMISSION—"OFFICERS OF THE STATE."

The members of the South Carolina Dispensary Commission created by Sess. Laws 1907, p. 835, No. 402, with power to wind up the South Carolina State Dispensary, are not "officers of the state" within the ordinary acceptation of the term, and, if officers at all, are officers appointed solely for the performance of specific duties.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6635 6638; vol. 8, p. 7804.]

3. INTOXICATING LIQUORS—REGULATION—DEPARTMENTS—DISPENSARY FUNDS.

All dispensary funds collected by and deposited to the credit of the State Dispensary Commission in the course of the winding up of the affairs of the State Dispensary under Sess. Laws 1907, p. 835, No. 402, requiring payment of the State Dispensary indebtedness from such funds, and the remaining surplus, if any, into the State Treasury, constitutes a trust fund for the payment of the claims of dispensary creditors.

4. COURTS—ACTION AGAINST OFFICERS—ACTION AGAINST STATE—"SUIT AGAINST THE STATE."

A suit to compel the State Dispensary Commission appointed to wind up the affairs of the State Dispensary under Sess. Laws 1907, p. 835, No. 402, to pay a dispensary creditor from the trust funds held by the Commission for the liquidation of dispensary indebtedness, was not a suit against the state within Const. U. S. Amend. 11, providing that the judicial power of the United States shall not extend to any suit at law or equity commenced or prosecuted against one of the United States by citizens of another state.

[Ed. Note.—Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.

For other definitions, see Words and Phrases, vol. 7, p. 6778; vol. 8, p. 7809.]

5. SAME—STATE AS PARTY.

The state of South Carolina was not an indispensable party to a suit by a state dispensary creditor to compel the South Carolina Dispensary Commission to pay complainant's claim from trust funds in the hands of such Commission.

6. EQUITY—MATTERS OF DISCRETION—ABUSE.

A court of equity has power to prevent an abuse of discretion by a state board, and require that the board's power be exercised according to law and in such a manner as not to unjustly injure property rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 89–92.]

7. INTOXICATING LIQUORS—REGULATIONS—DISPENSARY COMMISSION—MANDATORY DUTIES.

Under Sess. Laws 1907, p. 835, No. 402, creating the South Carolina Dispensary Commission, and directing it to pay all just liabilities of the State Dispensary, the Commission had no discretion as to the allowance of claims, its duty to allow and pay all just claims being mandatory.

8. COURTS—ACTS OF STATE—SOVEREIGNTY.

The decision of the South Carolina Supreme Court that the act authorizing the establishment of the State Dispensary and the purchase and sale of whisky by the state was constitutional did not constitute a decision that the state in so acting was performing governmental functions, and therefore could not be sued by creditors for the price of goods sold to such dispensary.

George B. Lester and Merrick & Barnard, for complainant.

J. Fraser Lyon, Atty. Gen., W. F. Stevenson, Felder & Rountree, and Abney & Muller, for defendants.

PRITCHARD, Circuit Judge. This is a suit in equity brought by the complainant to have the defendants declared trustees as to a certain fund in their hands, to determine the amount due to the complainant payable out of the said fund, and to compel the payment of the amount so found to be due.

The record shows that in 1892, the General Assembly of the state of South Carolina passed an act (Laws 1892, p. 62) regulating the purchase, sale, and distribution of intoxicating liquors within said state, and providing for a board consisting of three members, to be known as the "Board of Directors of the State Dispensary." The said act also provided for a Dispensary Commissioner to be elected by the General Assembly, and made it the duty of the board of directors of the State Dispensary to purchase all alcoholic liquors for lawful use within the state, and to sell the same to the various county dispensaries, as provided in said act. The law further provided that all money arising from the sale of liquors by the board of directors of the State Dispensary should be deposited with the State Treasurer, to be held by him as a separate and distinct fund, and kept to the credit of the said board of directors of the State Dispensary; that the liquors purchased by the said board of directors of the State Dispensary should be paid for out of this fund upon a warrant to be issued by the said Dispensary Commissioner, such warrant to be issued by the Dispensary Commissioner at the direction of the said board of directors of the State Dispensary, and no part of this fund could be lawfully paid out by the State Treasurer, except upon warrants so issued; that while said law was still in force, the complainant sold to the board of directors of the State Dispensary, at prices mutually satisfactory and agreed upon, a large quantity of whisky and other spirituous liquors, all of which whisky and spirituous liquor, except a small portion of which was afterwards returned by the defendants, were duly accepted and sold by the said directors of the State Dispensary at a substantial profit, in accordance with the dispensary law, and the proceeds of such sales were in due course of administration deposited in and became a part of the fund hereinbefore referred to; that the General Assembly of the state of South Carolina, at its session held in 1907, passed an act providing for the abolition of the State Dispensary, which act was duly approved on the 16th day of February, 1907, and section 47 of which is as follows:

"Sec. 47. The State Dispensary is hereby abolished, and all acts and parts of acts inconsistent with this act, are hereby repealed: Provided, that this act shall not have the effect of preventing any violation of the present criminal law relating to the dispensary being punished as now provided by law for offenses heretofore committed." (Laws 1907, p. 480.)

That at the same session the said General Assembly of the state of South Carolina passed another act entitled "An act to provide for the disposition of all property connected with the State Dispensary and

to wind up its affairs," which said act is in words and figures as follows:

"Session Laws, S. C., 1907.

"No. 402.

"An act to provide for the disposition of all property connected with the State Dispensary, and to wind up its affairs.

"Sec. 1. Be it enacted by the General Assembly of the state of South Carolina that immediately upon the approval of this act, the Governor shall appoint a commission of well known business men, consisting of five members, none of whom shall be members of the General Assembly, to be known as the State Dispensary Commission, who shall each give bond for the faithful performance of the duties required, in the sum of $10,000.

"Sec. 2. Said Commission shall immediately organize by the election of a Chairman and a Secretary from their number.

"Sec. 3. It shall be the duty of said Commission to close out the entire business and property of the State Dispensary, except real estate, and including stock in the several county dispensaries by disposing of all goods and property connected therewith, by collecting all debts due and paying from the proceeds thereof all just liabilities at the earliest date practicable. Said Commission shall be at liberty to make such disposition upon such terms, times and conditions as their judgment may dictate: Provided, that no alcoholic liquors or beers shall be disposed of within the state, except to county dispensary boards, and all liquors illegally bought by the present management may be returned to the persons, firms or corporations, from whom purchased, and for determining the legality of said purchases, they are hereby authorized and directed to investigate fully the circumstances surrounding all contracts for liquors, and to employ such assistant counsel as may be approved by the Attorney General, and such expert accountants as stenographers, and any other person or persons the Commission may deem necessary for the ascertainment of any fact or facts connected with said State Dispensary and its management, or control, at any time in the past, and to take testimony, either within or without the state: Provided, further, that all payments shall be made in gold and silver coin of the United States, in United States currency, or in national bank notes.

"Sec. 4. The compensation of each member of said Commission shall be $5.00 per day for each day actually employed about the business and actual expenses for the time engaged: Provided, that they shall receive no compensation for service rendered on this Commission after January 1st, 1908.

"Sec. 5. The said Commission shall pay to the State Treasurer, after deducting their compensation and other expenses allowed by this Act, all surplus funds on hand, after paying all liabilities.

"Sec. 6. The said Commission is hereby authorized to employ such bookkeepers, accountants, clerks, assistants and employés as they may deem necessary, and to contract with them at the time of employment for their compensation.

"Sec. 7. The said Commission shall submit to the Governor at the earliest day practicable, a complete inventory of all property received by them, with a statement of the liabilities of the State Dispensary, and as soon as the affairs are liquidated, a report in full of their actings and doings.

"Sec. 8. That said Commission shall have full power and authority to investigate the past conduct and affairs of the Dispensary, and all the power and authority conferred upon the committee appointed to investigate the affairs of the Dispensary, as prescribed by an act to provide for the investigation of the Dispensary, approved January 24th, A. D. 1906, be, and hereby is, conf—red upon the Commission provided for under this act: Provided, that for the purpose of the investigation of the affairs of the Dispensary as herein provided, each and every member of said Commission be, and hereby is, authorized and empowered, separately and individually, or collectively, to exercise the power and authority herein conferred upon the whole committee.

"Approved the 16th day of February, A. D. 1907." Laws 1907, p. 835.

This act was approved on the same day as the act abolishing the State Dispensary, to wit, the 16th day of February, 1907; and, within a short time thereafter, the Commission provided for was created by the appointment of the defendants, W. J. Murray, John McSween, B. F. Arthur, C. K. Henderson, and Avery Patton, as commissioners, and said defendants, having duly qualified and organized pursuant to the said act, became and do now constitute the State Dispensary Commission; and as such are charged with the execution of all the powers conferred and the performance of all the duties imposed upon said Commission by the said act. That immediately upon their qualification as commissioners, and organization as the State Dispensary Commission, the defendants entered upon the discharge of their duties, and, in accordance with the act providing for their appointment, took possession and control of the entire business and property of the State Dispensary, including the money which was at that time deposited with the State Treasurer to the credit of the board of directors of the State Dispensary, and said defendants have sold the property of said State Dispensary, except real estate, and collected many of the debts due to the said State Dispensary, and now have in their hands the proceeds arising from said sales and collections, which, together with the sum received from the State Treasurer, amount to about $800,000; that all of the money realized from the sale of the property of the said State Dispensary and the collection of debts due to it, has been from time to time, as received by the defendants constituting the State Dispensary Commission, and now is deposited to the credit of said Commission in certain banks in the state of South Carolina, subject to withdrawal only by said Commission, and no part of said money is in the Treasury of the State of South Carolina, or has ever been mingled with any funds belonging to said state; that the complainant furnished to the defendants, at their request, an itemized statement of its account against the State Dispensary, which account has been compared with the books kept by the State Dispensary and found to be in substantial agreement with said books; that complainant's account has also been audited by the company employed by the defendants for that purpose, and the complainant insists that, in accordance with said audit and the books of said State Dispensary, its account is correct, and that there is now justly due and owing to it, out of the funds in the hands of the defendants, directed to be applied to the payment of the just liabilities of the State Dispensary, a balance of $66,501.19, which balance is a just liability of the said State Dispensary; and although complainant has demanded said amount, the defendants have refused to pay the same or any part thereof. Complainant therefore asks that a receiver be appointed to take charge of and administer all the moneys now in the hands of the defendants, arising out of the sale of property belonging to the State Dispensary of South Carolina, or from the collection of debts due to it, or direct and decree that the amount due to complainant be immediately paid to it upon the execution of a good and sufficient bond conditioned to pay to defendants such sum or sums as may be found to be due to them by complainant and adjudged to be paid by it; that this court appoint a master with a view of having its claim passed upon and determined, and also requests this court to

grant a writ of injunction restraining the defendants from paying out or disposing of any of the moneys now in their hands until there can be an adjudication of the matters in controversy between complainant and defendants.

It is contended by counsel for defendants, first, that the funds in the hands of the State Dispensary Commission, created by the act of February 16, 1907, belong to and are the property of the state, which has the right to control the same, and which, through the said Commission as its agent, is in possession thereof. Second. That the said State Dispensary Commission is the mere agent or instrumentality of the state vested with the ministerial function of winding up the State Dispensary's business, selling the goods and property on hand, collecting the debts due the state in connection with said business, and holding the proceeds for the state and subject to its right of disposition thereof. And vested also with the judicial function of investigating all claims in connection with said business and determining the validity thereof, and that this Commission is a court within the meaning of section 720 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581). And also vested with the ministerial function of paying from the funds held by them for the state such of the said claims as they may upon said investigation find and decide to be just liabilities of the state. Third. That the pending action is in effect an action against the state, because it seeks to lay hold of funds belonging to the state and in the hands of the said Commission, as its agent, and through the said Commission in the possession of the state, and further seeks to have such funds applied to the payment of alleged liabilities of the state. So that the state is an indispensable party to the action. Fourth. That the state cannot be held to have waived its constitutional immunity from suit by the said act creating the "State Dispensary Commission," except to the extent of the remedies therein provided for and allowed to claimants for the collection of such debts as may be due them by the state in connection with its said dispensary business, and, therefore, such claimants are limited to the remedies therein provided for and allowed. Fifth. That the said act creating the State Dispensary Commission having been passed and the remedies therein provided for having been allowed, as a purely voluntary matter on the part of the Legislature of the state, the said act is subject to be repealed, and the allowance of the remedies therein provided for is subject to be recalled at any time at the pleasure of the Legislature and in its discretion.

Counsel representing the defendants do not agree as to the contention that this Commission is a court within the meaning of section 720—one of the distinguished counsel being of the opinion that this Commission is not a court within the meaning of that section. The court has carefully considered the arguments on this point, and, after much investigation, has reached the conclusion that the contention of the defendants in this respect is untenable. It is admitted that the Commission does not have the power to enter final judgment or to issue an execution, and while it is invested with certain powers, they are not to any appreciable extent judicial in their character. The authority conferred upon them to make inquiry is only for their own in-

formation and guidance, and does not confer upon them the power to judicially determine the matters submitted to them, and, this being so, the court is forced to the conclusion that it is not a court according to the well-defined meaning of the term.

The next question is as to whether this is a suit against the state or whether it is a suit to which the state is an indispensable party, and, in order to reach a correct determination of this question, it becomes necessary to inquire as to the nature and character of the duties required to be performed by the defendants under the act authorizing their appointment. The defendants are charged with the duty of settling and adjusting the unsettled claims against the State Dispensary at the time it was abolished, and are required by the provisions of the act hereinbefore mentioned to ascertain and pay such sums as may be found to be due the several creditors of the State Dispensary. These defendants are not "officers of the state" within the meaning of the ordinary acceptation of the term. If officers at all, they are officers appointed solely for the purpose of performing specific duties. In the case of W. U. Tel. Co. v. Myatt (C. C.) 98 Fed. 335 (foot of page 360), the court says:

"The act of the Legislature creating the court of visitation and the act extending the powers and jurisdiction thereof to telegraph companies cast upon the officials who are defendants in this suit the special duty of administering and enforcing said laws. Their offices were created solely for such purposes, and such defendants are not general officers of the state, whose duty it is to see to the enforcement of laws generally, and who act only by formal judicial proceedings in the courts of the state. This suit, therefore, is not against the state of Kansas, and hence is not within the prohibition of the eleventh amendment to the Constitution of the United Sates."

By this suit it is sought to enforce the rights of complainant in accordance with the provisions of the act in question. The object of this suit is not to coerce the defendants into doing something which the state law forbids them doing, but to compel them to do what the state statute requires shall be done.

At the time that the State Dispensary was abolished, State Dispensary funds to the amount of about $150,000 were on deposit in the State Treasury, and there was property connected with the State Dispensary and a large amount due to it for goods which had been sold to the county dispensers. The defendants have sold the property and collected a large number of the debts, the proceeds arising from such sales and collections amounting to about $650,000, which, together with the $150,000 received from the State Treasurer, makes a total of about $800,000. The amount of money in the State Treasury belonging to the dispensary fund, as well as the amount realized as hereinbefore stated, was turned over to the defendants, and by them placed to their credit in a number of banks in the state. This sum was placed in their hands for the specific purpose of carrying out the provisions of the act, to wit, the adjustment and settlement of the claim of complainant and those who were similarly situated. It is obvious, from a careful reading of the statute, that the Legislature intended that this fund should be treated as a special trust fund arising out of the operation of the State Dispensary, to be used primarily

for the purpose of settling all just liabilities incurred by the State Dispensary in the purchase of goods during its existence. The purpose sought to be accomplished by the Legislature was the payment of the outstanding indebtedness of the State Dispensary, as well as the disposal of its property and to wind up its affairs as a business concern. The fact that this money was realized from the sale of goods purchased from the creditors of the State Dispensary, when considered in connection with the action of the state Legislature in placing the entire funds in the hands of the defendants for the express purpose hereinbefore mentioned, clearly constitutes this a trust fund in the hands of the defendants, as trustees, who are charged with the duty of carrying out the purposes of the act.

While it is estimated that the State Dispensary's indebtedness amounted to only about $600,000, yet the Legislature provided that all the funds, amounting to $800,000, should be placed under the dominion and control of the defendants, thus clearly indicating that it was the intent of the Legislature that every dollar of the funds realized from the State Dispensary was to be treated as a trust fund, first, for the purpose of settling these claims, and then providing that any surplus remaining should be paid into the State Treasury as funds properly belonging to the state. This action on the part of the Legislature is significant, and clearly indicates that the chief object in appointing the Commission was to provide for the payment of claims similar to that of complainant. The Legislature having authorized these defendants to receive into their custody and control the funds in the hands of the State Treasurer, the state thereby surrendering its possession of the same, for the purposes hereinbefore mentioned, shows most conclusively that this fund was intended to be treated as a trust fund, and was to be used by the defendants for the purpose of carrying out the provisions of the act under which they were appointed. It cannot be reasonably insisted, in view of these circumstances, that the state is an indispensable party to this suit, inasmuch as it is not necessary that the state should be a party in order that there may be a final determination of the matters involved in this controversy. Therefore this is not a suit against the state within the meaning of the eleventh amendment.

The principal question involved in this controversy is as to whether the claim of complainant is a just liability against the State Dispensary. If it should be determined to be a just liability, the statute in question makes it the duty of the defendants to pay it, and, under these circumstances, the question sought to be litigated is one in which the state is not interested in the sense contemplated by the eleventh amendment. In the case of Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128, 27 L. Ed. 448, and other like cases, it was sought to compel the state officers to perform a duty either not directed to be done by the statute, or prohibited by it, or to enforce payment out of general funds, or where there was no special fund which the state itself had appropriated to and charged with its payment.

In the case of Rolston v. Missouri Fund Com'rs, 120 U. S. 411, 7 Sup. Ct. 610, 30 L. Ed. 721, the court said:

"There [in the Jumel Case] the effort was to compel a state officer to do what the statute prohibited him from doing. Here, the suit is to get a state officer to do what the statute requires of him."

The court in a further discussion of this subject, said:

"It is next contended that this suit cannot be maintained because it is in its effect a suit against the state, which is prohibited by the eleventh amendment of the Constitution of the United States, and Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128, 27 L. Ed. 448, is cited in support of this position. But this case is entirely different from that. There, the effort was to compel a state officer to do what a statute requires of him. The litigation is with the officer, not the state. The law makes it his duty to assign the liens in question to the trustee when they make a certain payment. The trustees claim that they have made this payment. The officer says they have not, and there is no controversy about his duty if they have. The only inquiry is, therefore, as to the fact of a payment according to the requirements of the law. If it has been made, the trustees are entitled to their decree. If it has not, a decree in their favor, as the case now stands, must be denied; but as the parties are all before the court, and the suit is in equity, it may be retained so as to determine what the trustees must do in order to fulfill the law, and under what circumstances the Governor can be compelled to execute the assignment which has been provided for."

This principle is fully sustained in the cases of Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 389, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Scott v. Donald, 165 U. S. 112, 17 Sup. Ct. 262, 41 L. Ed. 648; Tindal v. Wesley, 167 U. S. 220, 17 Sup. Ct. 770, 42 L. Ed. 137.

The failure of the defendants to comply with the statute cannot be treated as a refusal of the state to comply with the statute. On the contrary, it is a refusal on the part of the defendants to do that which they have been directed to do by the statute. Therefore a suit instituted against the defendants for the purpose of requiring them to perform the duties enjoined upon them by the statute is a suit against them as individuals, and is not in any sense a suit against the state.

As hereinbefore stated, it is insisted by counsel for the defendants that the commissioners are vested with discretion and judgment to pass upon the question as to whether or not the claims of creditors are just and valid, and that, therefore, this court cannot interfere with such judgment or discretion. The rule that courts will not control an officer in the exercise of a discretion conferred upon him is subject to qualification, and this is especially true in a court of equity when its exercise affects individual rights. It is well settled that the courts have the power to prevent an abuse of discretion and require that it be exercised according to law and in such manner as not to unjustly injure property rights.

"Auditing officers will be required by mandamus to make their audit according to law. If the compensation is fixed by statute or agreement, they will be required to audit the compensation so fixed. If they have already audited an account for a less sum than that fixed by statute or agreement, they will be required to set aside the audit already made and to reaudit according to law." Am. & Eng. Enc. Law (1st Ed.) vol. 14, 149. People v. Elmira Auditors, 82 N. Y. 80.

The act authorizing the appointment of these commissioners does not undertake to give to them discretion as to what claims to pay, but expressly directs them to pay all just liabilities. Hence, it follows that, if a claim is just, their duty is mandatory, and they possess no judgment or discretion as to its performance. It appears from the allegations of the bill that these defendants have already exercised the discretion with which they are invested by auditing and adjusting several accounts claimed to be due.

Among other things, it is charged in the bill that the defendants have improperly managed the funds placed in their hands. A careful consideration of the evidence fails to sustain this contention; it clearly appearing that these defendants have done no wrong in that respect, and that they are gentlemen of high character and standing.

It is insisted by counsel for defendants that this suit is instituted solely with a view of avoiding an investigation of the transactions between the State Dispensary and the complainant and other creditors in the purchase of whisky and other spirituous liquors. This contention is unfounded, inasmuch as this court will afford every opportunity for a complete and thorough investigation of any and all transactions connected with the former management of the State Dispensary in the purchase of the goods the payment for which is now sought. While the Supreme Court of South Carolina has decided that the act authorizing the establishment of the State Dispensary and the purchase and sale of whisky by the state was constitutional, it cannot be reasonably contended that in so doing the state was performing the functions usually exercised by a state necessary to preserve its autonomy and maintain its sovereignty. Nor can it be assumed that it was contemplated, at the time of the adoption of the eleventh amendment, that a sovereign state would ever engage in the purchase and sale of spirituous liquors for profit. The state having seen fit to engage in this business, and at the same time to deprive its citizens of the right to engage in such business in competition with the state, thereby placed itself in a position where it could not, with consistency, avail itself of the immunity conferred by the eleventh amendment in a suit like the one at bar in which it is sought to collect a debt contracted by the individuals placed in control of such business with implied, if not direct, authority to contract such debts. Having deprived its citizens of the right to engage in this particular line of business, reserving the right to monopolize the same through its agents appointed for that purpose, it would be manifestly unjust to permit the state, under any circumstances whatsoever, to avoid the payment of debts contracted by the purchase of goods from the sale of which it has derived enormous profits. And even if this were a suit against the State Treasurer instituted for the recovery of funds set apart for the express purpose of paying the indebtedness thus contracted, as in this instance, it might well be questioned as to whether such officer could claim immunity under the eleventh amendment. However, the court does not undertake to pass upon this phase of the question, inasmuch as the record shows that this is not a suit against a state official, or in any sense such a suit as is contemplated by the eleventh amendment.

For the reasons hereinbefore stated, the court is of opinion that it

has jurisdiction, and that the injunction heretofore issued should be continued to a final hearing.

At the time this opinion was announced, counsel stated in open court that the Attorney General of South Carolina had made application to the Supreme Court of that state for a mandamus to compel the defendants to pay over the sum of $15,000—that amount being appropriated by an act of the Legislature—out of this fund to the use of the Attorney General, the same to be used in prosecuting parties charged with violation of the law in connection with the management of the State Dispensary. 60 S. E. 928. This action on the part of the Attorney General is in the nature of a surprise and was entirely unnecessary, inasmuch as this court, if proper application had been made by the defendants or the Attorney General, would have gladly authorized the use of the same for such purpose, it appearing that after the payment of this amount there will remain in the hands of the defendants funds amply sufficient to satisfy all claims involved in this controversy. This seems to be an unwarranted attempt to provoke a conflict of jurisdiction between this court and the state courts of South Carolina.