## BARRON v. ALEXANDER.

(First Division. Juneau. May 4, 1912.)

No. 840A.

1. NAVIGABLE WATERS (§§ 36, 39*)—TIDELANDS—RIPARIAN OWNERS.

    The owner of land abutting on navigable water has, by virtue of such ownership, no right of possession or title to the tideland in front of such upland holdings, since the United States holds the title to all tidelands in Alaska in trust for the future state or states that may be hereafter carved out of and organized in this territory. But such upland owner enjoys the right of free access from his land to deep water navigation, thus affording him uninterrupted means of ingress and egress from his holdings to the highway. The law, therefore, subjects the tidelands to the will of the abutting upland owner to the extent only of enabling the latter to control the same for the purpose of securing an easement from his holdings to the navigable waters bordering upon his upland.

    [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 180–200, 239–244; Dec. Dig. §§ 36, 39.*]

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

2. NAVIGABLE WATERS (§ 39*)—TIDELANDS.

Plaintiff brought this suit to enjoin defendant from erecting a fish trap in front of plaintiff's upland, but below high tide, in the waters of Chatham Straits, Alaska. *Held*, that plaintiff has no ownership in the tideland or the navigable waters in front of his upland, and that, so long as the fish trap does not prevent his ingress to and egress from his upland over navigable waters in front, an injunction will not be issued to prevent defendant from constructing the fish trap. Injunction denied.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244; Dec. Dig. § 39.*]

3. NAVIGABLE WATERS (§ 39*)—RIPARIAN. RIGHTS—INJUNCTION.

Where defendant erected a fish trap below low water mark in Chatham Straits, Alaska, in front of plaintiff's upland, *held*, since it did not as a fact cut off plaintiff's reasonable opportunity of ingress and egress to and from his upland over the navigable waters in front thereof, it could not be enjoined, and plaintiff's suit was dismissed.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244; Dec. Dig. § 39.*]

This is an action in equity to restrain the defendant from constructing a fish trap in front of land alleged to be owned by the plaintiff.

The complaint alleges that the plaintiff is the owner and in possession of 5.27 acres of land abutting on the tide waters of Chatham Straits, an arm of the North Pacific Ocean; that some time in the year 1909 one V. A. Robertson caused said tract of land to be surveyed, and thereafter such survey was approved by the Surveyor General for the district of Alaska, and subsequently thereafter the said Robertson sold and transferred all his right, title, and interest in and to said land to the plaintiff herein; that plaintiff thereafter filed his application for patent to said tract of land in the local land office at Juneau, in the district of Alaska, and sought to procure patent from the United States thereto by means of soldier's additional homestead warrant; that no protest has been filed against said application for patent; and that said patent proceedings have been prosecuted to a final conclusion, and there remains nothing further to be done by the officers of the Interior Department to transfer the title to said premises

from the United States to plaintiff, except the ministerial act of issuing patent thereto. The complaint further alleges that defendant commenced driving piles on the tidelands immediately in front of said tract of land for the purpose of constructing a fish trap, and that defendant has, by reason of driving said piles, cut off plaintiff's right of access from his upland to the navigable waters of Chatham Straits, and that, unless restrained by this court, defendant will continue to further drive piles in the completion of said fish trap and entirely destroy plaintiff's access to the highway.

The defendant on information and belief denies the plaintiff's ownership of the tract of land described in the complaint, and admits that he has built and is building a fish trap in front of said upland, but alleges that all of such fish trap is below low water mark, and denies that his structure or fish trap in any way interferes with plaintiff's right of access from his upland to the navigable waters of Chatham Straits; and he further alleges that he acquired his interest in and to the fish trap site prior to plaintiff's alleged acquisition of the tract of land described in the complaint.

The reply puts in issue the affirmative defense set out in defendant's answer.

Winn & Burton, of Juneau, for plaintiff.

Z. R. Cheney and R. W. Jennings, both of Juneau, for defendant.

LYONS, District Judge. In the view the court takes of the case as presented by the pleadings and the evidence, it may be conceded that plaintiff is the owner and entitled to the possession of the tract of land described in the complaint. It may further be conceded that his right, title, and interest thereto was initiated at the time that his grantor caused a survey of the same to be made in the spring of 1909, and that his grantor and himself prosecuted the patent proceedings described in the complaint with reasonable diligence.

The only questions, therefore, necessary to be determined in order to adjudicate the rights of the parties hereto are: first, what right has plaintiff in the tidelands or the space be-

tween his upland and navigable water; second, is the defendant interfering with such rights in any manner?

The owner of land abutting on navigable water has, by virtue of such ownership, no right of possession or title to the tideland in front of such upland holdings, since the United States holds the title to all tidelands in Alaska in trust for the future state or states that may be hereafter carved out of and organized in this territory. But such upland owner enjoys the right of free access from his land to deep water navigation, thus affording him uninterrupted means of ingress to and egress from his holdings to the highway. The law, therefore, subjects the tidelands to the will of an abutting upland owner to the extent only of enabling the latter to control the same for the purpose of securing an easement for his holdings to the navigable waters bordering upon his upland.

"But, whether the title of the owner of such lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and among these rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf, or pier for his own use or for the use of the public, subject to such general rules and regulations as the Legislature may see fit and proper to impose for the protection of the rights of the public, whatever those may be." Yates v. Milwaukee, 77 U. S. (10 Wall.) 497, 19 L. Ed. 984.

"This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with the established law, and if necessary that it be taken for the public good, upon due compensation." Yates v. Milwaukee, supra.

To the same effect, see Pacific Coast Co. v. McCloskey, 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673; Decker v. Pacific Coast Co., 164 Fed. 974, 91 C. C. A. 102; Columbia Canning Co. v. Hampton, 161 Fed. 160, 88 C. C. A. 224; Dalton v. Hazelet, 182 Fed. 561, 105 C. C. A. 99.

It will be conceded, therefore, that it is the settled law of this jurisdiction that one owning land abutting on navigable water has a right of free access from such abutting premises to the highway. But what is meant by the right of free access from such upland to deep water navigation? Counsel for the

plaintiff earnestly insist that the littoral and riparian rights of the upland owner give him the privilege of preventing any one from building any structure or in any way occupying any portion of the space between his upland and the highway, regardless of whether or not the same may in any way interfere with reasonable access from his upland to deep water, and without reference to whether or not he has any need or any desire to appropriate the same premises to any beneficial use.

Section 3 of an act of Congress, entitled "An act for the protection and regulation of the fisheries of Alaska," approved June 26, 1906, provides:

"That it shall be unlawful to erect * * * any dam, barricade, fence, trap, fish wheel, or other fixed or stationary structure, except for purposes of fish culture, in any of the waters of Alaska at any point where the distance from shore to shore is less than 500 feet, or within 500 yards of the mouth of any red salmon stream, where the same is less than 500 feet in width, with the purpose or result of capturing salmon or preventing or impeding their ascent to their spawning grounds, and the Secretary of Commerce and Labor is hereby authorized and directed to have any and all such unlawful obstructions removed or destroyed." Act June 26, 1906, c. 3547, 34 Stat. 479 (U. S. Comp. St. Supp. 1911, p. 1228).

Unless, therefore, a fish trap comes within the denunciation of the section of the statute just quoted, it is a legal institution under the laws of the district of Alaska, and entitled to the protection of the law the same as any other legitimate industry. There is no contention made here that the construction of the fish trap, where located, is within the inhibition of the section of the statute last quoted. It is the policy of the law to encourage legitimate industry and commerce, and, wherever the right which any person enjoys under the law may be exercised without interfering with the right of another, the law prevents such interference by compelling both parties to observe the limitations necessary in order that both may successfully enjoy the privileges and advantages which the law secures to each. If, therefore, the only right which the upland owner enjoys in the tidelands in front of his upland holding is the right to pass over the same, why should he be permitted by the law to insist that all the premises between his land and deep water remain unoccupied and unproductive, un-

less such condition is necessary in the protection of his littoral or riparian right.

The United States holds the tidelands of Alaska in trust for the future state or states which may be erected out of this territory, and the upland owner, as against the United States, can only insist upon his right of free access to deep water. It therefore cannot be successfully urged that the United States would not have the right to erect any structures on the tideland in front of an upland owner, providing such structures would not interfere with the upland owner's right of ingress and egress to and from his premises to the highway. It follows that the only right which the upland owner holds, which cannot be taken from him against his will, except by condemnation proceedings, is his easement, which provides a passageway from his land to deep water. By what course of reasoning can it be held, therefore, that a private individual, maintaining and operating a legitimate industry in front of the upland owner's holdings, which does not conflict or interfere with the latter's access to deep water navigation, should be restrained from operating such industry at the instance of the upland owner, when the latter's legal rights are not infringed by reason of the existence of such industry?

The facts in this case are almost identical with the facts in Re Columbia Canning Co. v. Hampton, supra. It is true in that case the plaintiff did not allege that the fish trap of the defendant was interfering with the former's right of access from his upland holdings to navigable water, but his complaint did allege that the defendant's fish trap was constructed on the tideland immediately in front of his upland holdings. But our appellate court held in that case that the complaint was insufficient to state a cause of action. The defect in the case, however, could not have been cured by merely alleging that the plaintiff's access was cut off by the maintenance of defendant's structure, unless the evidence in the case actually proved the truth of such allegation. If plaintiff's contention in this case were tenable, the court would have held the complaint in the Hampton Case sufficient, for in that case the complaint did show that the structure erected by defendant was

on the tideland in front of plaintiff's upland holdings. It is apparent from the evidence that the principal object of plaintiff in securing title to the tract of land described in the complaint was to enable him to control the fishing site in front of such upland. It is true, as the plaintiff says, he may be able to use, and probably can use, such upland for other purposes, but it is apparent, from plaintiff's own testimony, that his main purpose in securing title to such property was to enable him to hold the frontage for the purpose of erecting a fish trap and enjoying the sole right to fish by any stationary appliance between his upland and deep water navigation. However the pleadings in this case may differ from the pleadings in the Hampton Case, it is obvious that the object of both suits is the same, to wit, to enable the plaintiff to enjoy exclusive fishing rights in front of his upland holdings.

In re Decker v. Pacific Coast Co., supra, Judge Morrow, after quoting from Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 321, used the following language:

"This is the general rule, and is designed to keep navigable waters free and open to the public for commerce and navigation, and at the same time permit the littoral owner and those engaged in commerce and navigation to have access to navigable water; but it cannot be ascertained from the allegations in the complaint in this case, nor does it appear in evidence, in what manner the maintenance of the buildings and wharf by the appellee in front of appellant's premises prevents her from having access to the navigable waters of Gastineaux Channel. The presumption is that such access would be facilitated, rather than obstructed, by the maintenance of a wharf and other suitable structures for the accommodation of the public in the discharge and shipment of passengers and merchandise arriving and departing by water at the port of Juneau."

The language quoted is incompatible with the theory of the plaintiff that no structures may be maintained on the tideland in front of the upland owner's premises against his will. Nor is the holding in the Decker Case in any manner in conflict with the holding in Re McCloskey v. Pacific Coast Co., supra, wherein the court held that the littoral owner had a right of access to the navigable waters in front of his land and from every part thereof. It does not follow, because the littoral owner has a right of access from every point of his

land to navigable water, that he can insist on proceeding from every such point in a course at right angles to his shore line. Nor does the opinion in Re Dalton v. Hazelet, supra, in any way conflict with the views herein expressed, for in that case the lower court found as a fact that the structures of the defendant did interfere with the right of access of the littoral owner to navigable water, and, the bill of exceptions having been stricken, there was nothing for the appellate court to consider, excepting the allegations of the bill and the findings of the court, and the complaint alleged and the trial court found as a fact that the structures of the defendant interfered with the plaintiff's right of access from his upland to navigable water.

"The plaintiff had erected an oyster house in a tidal river, opposite the defendant's villa lots. The defendant tore it down, before it was used, claiming that it obscured the prospect, obstructed the access, and injured the value of his lots. It did not appear that the waterway to the lots had ever been used. *Held,* that the defendant's act was unjustifiable." Bowden v. Lewis, 13 R. I. 189, 43 Am. Rep. 21.

In re Taylor v. Commonwealth, 102 Va. 759, at page 775, 47 S. E. 875, at page 881 (102 Am. St. Rep. 865), the court said:

"In the case before us the property of the plaintiff is used merely for farming purposes. There has not been erected, and as far as the record discloses there is no purpose to erect, any pier or wharf. She is engaged in no business requiring such access to the channel of the stream as cannot be fully enjoyed consistently with every right which the state has exercised, or which it has delegated to others. The commonwealth holds as trustee a vast body of land covered by the flow of the tide, precisely as in the case before us, for the benefit of her citizens. It is not only her right, but her duty, as such trustee, to render this property productive. Is it reasonable that the commonwealth, holding title to the soil, is to be wholly subordinated in the use of it to the use with which another is clothed merely by virtue of being an owner of the adjoining shore, when the rights of each and all can be fully protected without diminution and without hindrance? If the time should come when the river front of the plaintiff shall be divided into lots, whose owners find it necessary to their profitable enjoyment to erect piers and wharves upon them if they engage in business which shall require exclusive access to the channel of the stream, it may be that a case could then be presented more meritorious than that which we have under consideration, and, in the light of changed conditions, the court may be again called upon to consider the respective rights of the riparian

owner and those remaining in the commonwealth, or which have been granted by her to others. The property in dispute was originally leased by the state as an oyster planting ground. By chance, in the prosecution of that industry, mineral water was discovered far beneath the soil, which has proved of great value. There may be other and more valuable substances hidden in the soil; as to that, conjecture would be idle. But whatever that soil contains belongs to the state, and the state, and it alone, has the right to develop those hidden sources of wealth, if such there be, for the common benefit of all of its citizens."

In re Ferry Pass Inspectors' & Shippers' Association v. White River Inspectors' & Shippers' Association, 57 Fla. 399, at page 405, 48 South. 643, at page 645, 22 L. R. A. (N. S.) 345, at page 350, the court said:

"While the complainant and the defendant, in common with all other inhabitants of the state, have a right to use the waters of the navigable stream and the lands thereunder, including the shore or space between high and low water mark, for purposes of navigation and the transportation of logs thereover, neither the complainant nor the defendant has such right to the exclusion of its lawful exercise by the other or by any other inhabitant of the state. If the defendant in fact so uses the water or the land thereunder, including the shore, as to deprive the complainant of all access to the river from its lands, or to its lands from the river, or to injure the complainant in the use and enjoyment of his riparian land or the business thereon, the defendant may be enjoined from a continuance of such wrong; but the complainant has no exclusive right to use the waters or shore for its business. If the defendant obstructs the mere right of navigation, with no special injury to the complainant's riparian property, the remedy is by public officials. The prayer of the bill of complaint appears to contemplate the enforcement of an exclusive right of the complainant to the use of the waters and shore opposite its land for the conduct of its business; and, as the complainant has no such exclusive right, the particular and entire relief as prayed should not be granted. There may, however, under the allegations of the bill of complaint, be properly granted some relief against a total exclusion of the riparian owner from access to his lands, and the demurrer should not have been sustained."

In re Barnes et al. v. Midland R. Terminal Co., 193 N. Y. 378, at page 385, 85 N. E. 1093, at page 1096 (127 Am. St. Rep. 962), the court said:

"It is necessary, therefore, to give the condition in the patent its reasonable and obvious meaning, and when that is done it matters but little whether the defendant rests upon its letters patent or upon its legal right as a littoral owner. The result in either case is the

same, and the peculiar language of the patent is referred to only because the referee, in one of his findings, emphasizes the fact that the defendant had constructed its pier a year or two before it obtained its letters patent. It is enough to say that, either as littoral owner or by virtue of its letters patent, the defendant had the right to construct and maintain a pier that was reasonably adapted to the purpose for which it was primarily intended, and that was to provide a means of passage from the upland to the sea. To the extent that the reasonable exercise of this right necessarily interfered with the right of the public to pass along the foreshore, the former was paramount and the latter was subordinate; and the logical corollary to that proposition is that, just in so far as the attempted exercise of the littoral or riparian right passed the prescribed bounds of necessity and reason, the conditions were reserved and the right of passage along the foreshore remained the paramount right. That is so because a littoral or riparian owner, in his capacity as such, acquires only those rights in the foreshore which are necessary to enable him to make a reasonable use of his upland; and the principal attribute of such use is access to and egress from the open water. The defendant, therefore, had the right to erect and maintain a pier for the purpose of connecting its upland with the sea just so far as it was a necessary consequence of the reasonable exercise of that right to obstruct the foreshore and thus to limit the free and convenient passage of the public; the defendant's rights are superior to all others save those reserved to Congress and the state Legislature. To the extent that the defendant transcended these bounds, the rights of the public remain unaffected."

In re Hedges v. West Shore R. Co., 150 N. Y. 150, at page 156, 44 N. E. 691, at page 693 (55 Am. St. Rep. 660), the court, among other things, said:

"The owner of the banks and shore could not so exercise his right of passage or access to the channel as to destroy, or unreasonably interfere with, the right of the sovereign to put its own land to such use as it thought proper. Where two such rights or interests exist, with respect to the same portion of the earth's surface, each must be exercised and enjoyed in a reasonable way. Each right or interest in such a case is always subject to the qualification that it cannot be exercised or enjoyed in such a way as to destroy the other. * * * The owner of the uplands cannot exercise his easement or right of access to the channel in such a way as to prevent other parties, to whom the sovereign has granted the bed of the river, or some portion of it, from using their own property in a reasonable way. The rights of the parties in these respects are governed by the general rules of law applicable to easements and servitudes generally."

See, also, an unpublished opinion by this court in cause No. 398, Valdez (Dalton et al. v. Katalla Co. et al., 4 Alaska, 410). Counsel for the plaintiff strenuously insist that the holding by

this court in the Katalla Case, supra, is in conflict with a long line of decisions by the Alaskan courts with reference to the rights of the littoral and riparian owner, and cite Juneau Ferry Co. v. Alaska Steamship Co., 1 Alaska, 533; Lewis v. Johnson, 1 Alaska, 529; Carroll v. Price (D. C.) 81 Fed. 137; United States v. Roth, 2 Alaska, 257; Sutter v. Heckman, 1 Alaska, 81.

In re Juneau Ferry Co. v. Alaska Steamship Co., supra, it is true this court held that the owner of the uplands and shore line has a right to pass out over tidelands to deep water, subject to the rights of navigation and commerce, and, while such principle is not in conflict with the views expressed herein, yet on appeal in that case, in the opinion reported in 121 Fed. 356, 58 C. C. A. 34, our appellate court held that there was no question of riparian ownership involved. The question was as to whether or not the plaintiff had such a possession in the tideland as would enable him to maintain ejectment. In modifying the holding of the lower court, Judge Ross said on page 357 of 121 Fed., on page 35 of 58 C. C. A., among other things:

"The suit being one in equity, we must decide it upon the evidence; and we are of the opinion that while the evidence undoubtedly shows that, the complainant and its predecessors in interest used the strip of water front in controversy from time to time, yet it falls far short of establishing such possession thereof on the part of the complainant as would justify the injunction prayed for. It is still clearer that there was no evidence of any ownership of the premises in question by the defendant to the suit, and therefore that portion of the decree adjudging defendant the owner thereof is erroneous. The appropriate decree, in view of the evidence, is one to the effect that the complainant take nothing by its suit, and dismissing the bill at the complainant's costs."

The lower court apparently took the view that the defendant, by reason of being the upland owner, enjoyed the right to the possession of all the tideland in front of him, but the appellate court refused to concur in that doctrine.

In the case of Lewis v. Johnson, supra, if the opinion recites all of the facts pleaded, it is clearly in conflict with the holding of our appellate court in Columbia Canning Co. v. Hampton and Decker v. Pacific Coast Co., supra.

In re Carroll v. Price, supra, the littoral rights of riparian owners are not discussed, but the case deals with possessory rights on tideland.

With reference to the case of United States v. Roth, supra, I think it will be conceded that the doctrine announced in that case was clearly overruled by the two cases last cited. In that case the court held that the upland owner had constructive possession of all of the tidelands in front of his holdings, and therefore that one who erected a tent on such tideland was guilty of criminal trespass. However, under the holdings of our appellate court, it seems unnecessary at this time to cite any authorities to show that the upland owner has no possessory rights whatever in the tidelands in front of him.

In re Sutter v. Heckman, supra, the trial court held that the owner of the upland by virtue of his riparian and littoral rights acquired the possession to a certain piece of tideland in front of him by virtue of such littoral and riparian rights. On appeal our appellate court (119 Fed. 83, 55 C. C. A. 635), while affirming the decision of the lower court, refused to adopt the theory of the lower court, but affirmed the case on the ground that the plaintiff and his predecessors in interest were in the possession of the tidelands in controversy on May 17, 1884, and had held continuous possession of the same until the commencement of the suit, and for that reason such possession was protected by section 8 of an act providing a civil government for Alaska and for other purposes, approved May 17, 1884 (23 Stat. 24, c. 53). It is true the appellate court quoted at length from the opinion of the trial court, not for the purpose of approving the principles of law announced therein, but as a means of ascertaining the facts therein recited, and, in commenting on such quotation from the opinion of the trial court, Judge Ross said, on page 88 of 119 Fed., page 640 of 55 C. C. A.:

"We are of the opinion that the decree may and should be affirmed without reference to the theory upon which the court below proceeded."

And on motion for rehearing, in 128 Fed. 393, 63 C. C. A. 135, the appellate court reaffirmed its former ruling and based

the affirmance of the decree on the ground of continuous possession from May 17, 1884, until the time of the commencement of the action, thus holding that the act of May 17, 1884, which protected Indians and other persons in their possession of lands until future legislation by Congress should enable them to acquire title thereto, protects such persons in possession of tide lands as well as those in possession of uplands.

After a careful and critical review, therefore, of the opinions of this court regarding the question of littoral rights, it is reasonably obvious that, where in conflict with the holding in the Katalla Case, they have been overruled by the cases of Columbia Canning Co. v. Hampton and Decker v. Pacific Coast Co., supra.

In re Coburn v. Ames, 52 Cal. 385, at page 398, 28 Am. Rep. 634, at page 638, the court said:

"Assuming as we do, for the purposes of this decision, that the riparian owner is entitled to wharf out to deep water, it is clear, we think, that this right is in the nature of a franchise or privilege, to be exercised or not by him at his election. He may never see fit to avail himself of the privilege; and it cannot be pretended that, while declining to avail himself of his right to wharf out, he is, nevertheless, entitled to the possession of the land below high-water mark, on the theory that at some future time he may possibly change his mind and desire to erect a wharf. On this theory he might capriciously refuse to erect a wharf at a point where the convenience of commerce demands it, and might prevent others indefinitely from engaging in the enterprise. A theory which works this result cannot and ought not to be upheld. On the contrary, giving to this right of the riparian owner its widest scope and latitude, it amounts only to this: That if he desires to wharf out, and is unlawfully obstructed in the exercise of the right, he may maintain an action for damages; and, if the obstruction amounts to a public nuisance, it may be abated by appropriate proceedings for that purpose. If it be only a private nuisance which obstructs him in the exercise of his right to wharf out, he may possibly cause it to be abated by the appropriate method. But he has no such title or right to the possession of the bed of the ocean as will enable him to maintain ejectment. In this state, there are numerous large land estates, held in private ownership, which front for many miles on the shore of the ocean, and on navigable bays and inlets within the ebb and flow of the tide; and if the doctrine were tolerated that each of these proprietors, while himself declining to erect and maintain the docks, piers, and wharves which are necessary for the convenience of commerce, nevertheless, in virtue merely of his riparian rights, might maintain ejectments for all such structures erected by others, which,

when recovered, he might either demolish or cease to use in aid of commerce, it is not difficult to foresee the disastrous consequences which would result from such a doctrine."

If the doctrine contended for by the plaintiff in this case were adopted as the law in the district of Alaska, a few individuals could secure title to all upland abutting on all the waters containing all the available trap sites within the district of Alaska, and thereafter enjoy a perpetual right to erect fish traps immediately in front of such upland, and, if any other person should attempt to erect such a structure, could stay such attempt by injunctional proceedings, although such structures or traps may not in any way prevent the upland owner from reaching navigable water. The language last quoted from the California case portrays clearly the evil results which would follow were the plaintiff's contention with reference to the rights of littoral and riparian owners upheld in this jurisdiction.

The upland owner unquestionably has a right to wharf out from his premises, as is held by our appellate court in Dalton v. Hazelet, supra, but he merely enjoys that right for the purpose of improving or providing an access to navigable water; but, in case he has no desire or no reason for erecting a wharf or pier, why should the law permit him to interfere with another who desires to maintain a legitimate and productive industry in front of his upland, particularly when the same does not in any manner interfere with a reasonable right of access which he enjoys by virtue of being the owner of the lands abutting on navigable water?

Assuming, therefore, in accordance with the views herein expressed, that the upland owner merely enjoys, under the law, a reasonable right of access from his upland to navigable water, the second question involved, to wit, whether the defendant's fish trap interferes with such right, will next be considered. The evidence shows that all of the structure is below low-water mark, and, while there is considerable conflict with reference to the feasibility of the plaintiff's being able to reach all points of his upland from deep water, a careful review, however, of the testimony will disclose the fact that for any

purpose to which the land of the plaintiff can be appropriated, under his testimony, he will have no difficulty whatever in reaching such premises from the navigable waters of Chatham Straits. If he desires to build a wharf, such wharf can be built under the testimony from either the west or the east side of the premises. But there is no testimony which warrants the court in assuming that the plaintiff needs or will construct a wharf to such premises at this time, unless he can by injunction compel the defendant to remove his fish trap so that plaintiff may erect one in its place and stead. The plaintiff admits in his testimony that he desired to build a fish trap in about the same place as the defendant has erected his, and that, if the defendant's fish trap were not in existence, he would probably construct one in the same place. Such fish trap, if constructed by plaintiff, would evidently interfere with his right of access to his upland to the same extent that the defendant's structure obstructs such access. Since the hearing of this trial, however, the judge of this court, in company with counsel for both the plaintiff and the defendant, has had an opportunity to visit the situs of the fish trap and the tract of land described in plaintiff's complaint, and it appears that the lead line of the defendant's trap has been changed, so that instead of running in a northeasterly direction from the main part of the trap, as indicated by the exhibits offered in evidence, it now extends in a direction a little west of north from the trap, thus eliminating any possible question in the judgment of the court of its interfering with plaintiff's right of access from every point of his upland to the navigable waters of Chatham Straits.

For the reasons herein assigned, this action should be dismissed. Let findings of fact, conclusions of law, and decree be entered in accordance with this opinion.