DALTON et al. v. HAZELET.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

No. 1,780.

1. EXCEPTIONS, BILL OF (§ 56*)—ALLOWANCE—ORDER—"SIGNING."

Signature of the judge to orders allowing and settling bills of exceptions do not constitute a "signing" of the bills within Act Cong. June 6, 1900, c. 786, § 223, 31 Stat. 366, providing that the statement of the exexceptions when settled and allowed shall be signed by the judge and filed with the clerk, etc.

[Ed. Note.—For other cases, see Exceptions, Bill of, Dec. Dig. § 56.*

For other definitions, see Words and Phrases, vol. 7, pp. 6508–6512.]

2. EXCEPTIONS, BILL OF (§ 43*)—FILING—TIME.

Under Act Cong. June 6, 1900, c. 786, § 372, 31 Stat. 395, providing that exceptions prepared and settled shall be filed with the clerk within 10 days from the entering of the decree or such time as the court may allow, exceptions not filed with the clerk until more than six months after the entering of the decree without an order extending the time were nugatory.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 72½; Dec. Dig. § 43.*]

3. EXCEPTIONS, BILL OF (§ 40*)—FILING—TIME—EXTENSION.

The trial court has no jurisdiction to extend the time for filing exceptions after the time to file the same has expired.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 60; Dec. Dig. § 40.*]

4. EXCEPTIONS, BILL OF (§ 36*)—FILING—TIME—SUSPENSION.

A motion to vacate the judgment is ineffective to extend the time for filing exceptions.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 51; Dec. Dig. § 36.*]

5. EQUITY (§ 428*)—ALLOWANCE—FILING—TIME.

Where at the close of the trial the court announced that they would find in favor of plaintiff, and directed plaintiff's counsel to prepare findings of fact, conclusions of law, and a decree, and allowed 30 days for that purpose, defendants were not entitled to have the whole 30 days elapse before the filing of such finding and decree, but plaintiff was entitled to present for allowance and file the findings and decree immediately; the decree being regarded as final from the date it was filed.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 428.*]

6. EQUITY (§ 389*)—FINDINGS—ALLOWANCE.

Where an order for findings in favor of complainant did not call for findings by defendant, and the decree was sustained by plaintiff's findings of fact and conclusions of law adopted by the court, the fact that the court also allowed some of defendant's proposed findings subsequently served was immaterial.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 389.*]

7. APPEAL AND ERROR (§ 544*)—RECORD—BILL OF EXCEPTIONS—ABSENCE—SCOPE OF REVIEW.

In the absence of a bill of exceptions in an equity case, the substantial merits can be considered on appeal only as shown by the pleadings, findings of fact, conclusions of law, and the decree.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2418; Dec. Dig. § 544.*]

8. TRUSTS (§ 366*)—ACTIONS—PARTIES.

A trustee, who merely sues to reduce property to his possession or to protect his title as trustee without in any way affecting his relations with

the cestui que trust, need not make the cestui que trust a party to the action.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 366.*]

9. NAVIGABLE WATERS (§ 39*)—SHORE RIGHTS—WHARVES—EASEMENTS.

Where plaintiff as trustee owned certain land bordering an ocean inlet, plaintiff's shore boundary being described "thence with the meanders along the shore line of Orca Inlet," the existence of a railway line crossing a portion of the tide flats did not cut off plaintiff's littoral right held as an incident to the ownership of the upland, where it appeared that there was a piece of upland owned by plaintiff lying between the railroad's right of way and the portion of the shore in front of which plaintiff desired to construct a wharf.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 39.*]

10. PUBLIC LANDS (§ 47*)—LITTORAL RIGHTS—RESERVATION—STATUTES.

Act Cong. May 14, 1898, c. 299, § 10, 30 Stat. 413 (U. S. Comp. St. 1901, p. 1469), relating to the conveyance of shore lands in Alaska, and providing for a roadway reservation 60 feet wide parallel to the shore line as near as may be practicable for uses of public highway, refers to a roadway through the reserved land previously described, and not other lands granted in fee under the homestead laws.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 47.*]

11. PUBLIC LANDS (§ 47*)—SHORE LANDS—RESERVATION—STATUTES.

Act Cong. March 3, 1903, c. 1002, 32 Stat. 1028 (U. S. Comp. St. Supp. 1909, p. 549), amending Act Cong. May 14, 1898, c. 299, 30 Stat. 409 (U. S. Comp. St. 1901, p. 1412), extending the homestead laws to Alaska, limits the extent of a homestead entry to 320 acres, and provides that no entry shall be allowed extending more than 160 rods along the shore of any navigable water, and along such shore a space of at least 80 rods shall be reserved from entry between all such claims, and declares that nothing therein contained shall be construed to authorize entries to be made or title to be acquired to the shore of any navigable waters within the district. Held that, where shore land was acquired under such amended act, there was no reservation of a roadway above high-water mark.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 47.*]

12. NAVIGABLE WATERS (§ 41*)—"SHORE."

The "shore" of navigable water is the ground lying between ordinary high-water and low-water mark.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 41.*

For other definitions, see Words and Phrases, vol. 7, pp. 6495–6497.]

13. NAVIGABLE WATERS (§ 43*)—UPLAND OWNER—RIGHTS IN SHORE.

Where a homestead entry in Alaska was bordered on one side by the meanders of the tide waters of Orca Inlet, the entryman, as the owner of the upland, though acquiring no title to the shore or soil below high-water mark, was entitled to free and unobstructed access to the navigable water, and for that purpose to construct a wharf over such lands without interference by third persons claiming the right to use the shore.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 43.*]

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska.

In Equity. Suit by George C. Hazelet, as trustee, etc., against Jack Dalton and others, to restrain defendants from constructing and maintaining a wharf in the tide lands in front of complainant's wharf and upland on the water front of the town of Cordova, on Orca Inlet,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Alaska. From a decree for complainant, defendants appeal. Affirmed.

Heid & Love and Maloney & Cobb, for appellants.

R. F. Lewis, Richard C. Harrison, and Ostrander & Donohoe, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. It is alleged in the complaint that on the 16th day of April, 1907, the United States by patent conveyed to Thomas J. Donohoe the fee-simple title to a tract of land containing 143.65 acres on Orca Inlet, Alaska, being the land embraced in United States survey No. 449. A map showing said land was attached to the complaint and marked "Exhibit A." It was alleged: That thereafter on the 24th day of February, 1908, said tract of land, save and except 13.65 acres in the northwest corner of the tract, was conveyed by deed to the plaintiff in trust for the following named persons: Copper River Railway Company, George C. Hazelet, A. J. Adams, John Y. Ostrander, S. Blum, George M. Easterly, John Lyons, and T. J. Donohoe. That plaintiff caused a portion of said land to be surveyed and platted into lots and blocks, streets and alleys, and has since sold a large number of lots in the tract so platted. That the purchasers had gone upon the same and erected buildings for business and mercantile purposes. That plaintiff was the owner in fee of all the tracts of land marked on said plat "reserved." That on or about the 10th day of June, 1908, plaintiff commenced the construction of a dock or wharf upon the land owned by him in fee above the line of mean high tide, with the intention of continuing the same over the tide lands lying immediately in front of and abutting upon his high land to deep water. That on or about the 6th day of July, the defendants without right and against the protest and objections of plaintiff, and unlawfully and with force, went upon the tide land immediately in front of the wharf being constructed by the plaintiff, and for the purpose of hindering and preventing plaintiff from continuing his said wharf to deep water commenced driving piles, and at the date of the verification of the complaint had covered a space of land with piling 68 feet wide by 130 feet long, and had covered said piling with a deck or platform. That the tract of land so occupied by defendants was between the line of mean high and low tide and was directly in front of the wharf being constructed by plaintiff and between the high land owned by plaintiff and deep water, and was so constructed as to prevent plaintiff from completing his said wharf to deep water. That defendants were in possession of said piling and the land covered thereby, and were maintaining such possession with a large force of men, and had threatened to drive more piling in that vicinity and to further obstruct and prevent plaintiff from extending his said wharf to deep water. That by reason of the obstruction then constructed by defendants and maintained by them plaintiff was prevented from completing his said wharf to deep water, and was hindered and damaged in the use of that portion then constructed for the reason that defendants' obstruction prevented the free landing of barges and light draft

boats at the outer edge of his said wharf. That plaintiff's wharf was a public necessity, being necessary for the inhabitants of said town site for the purpose of bringing in and over the same lumber and building materials, provisions, and supplies. That if defendants were not restrained from maintaining the obstruction then constructed and from building and maintaining further obstruction as they threatened so to do, plaintiff would suffer great and irreparable injury and damage by being prevented from furnishing the purchasers of lots in the town site with an easy means of landing lumber and building materials for the erection of buildings, and the plaintiff would be prevented from landing lumber, building material, and other supplies necessary in the prosecution of street grading and other improvements for the betterment and improvement of the town site. That the defendants and each of them were insolvent and unable to respond in damages. Plaintiff prayed that pending trial defendants should be restrained from maintaining the obstruction described, and that upon a final hearing the defendants should be permanently enjoined from maintaining the obstruction.

Defendants in their answer alleged that there was a defect of parties plaintiff and defendant in the suit; that the plaintiff was not the sole owner, nor did he alone construct the structure denominated a dock or wharf in said complaint, nor did he hold the same as a trustee of an express trust. It is alleged that by virtue of the laws of the United States in force in Alaska the grant of land to plaintiff's grantor was subject to an easement of a right of way as a public highway bordering the shore of Orca Inlet, separating the land granted in fee from the shore, and that no riparian rights whatever passed as appurtenant to the grant, and that a right of way had been acquired by the Copper River & Northwestern Railway Company for its line of railroad between the shore lands upon which plaintiff's structures were erected and the high land claimed by the plaintiff, and thereby any and all riparian rights, if any, claimed by plaintiff, had been cut off and destroyed.

Defendants further allege that in June, 1908, they went upon the open, unoccupied tide flats in front of the said town of Cordova and began the construction of a wharf or dock for the accommodation of the general public and in aid of commerce and navigation; that they intended to, and but for the acts of plaintiff and his associates would, have constructed a wharf of substantial character, capable of accommodating ocean-going ships from the deep waters of Orca Inlet, across such tide flats, and connected the same with the foot of C street in said town by a good and sufficient approach; that shortly after the defendants began the construction of said dock or wharf, and when they had completed about 80 by 100 feet of the same, the plaintiff and his associates began the placing of piling and covering the same next to the shore between the dock of plaintiff and the shore so as to cut off defendants' approach, and have since refused, and still refuse, to allow the defendants to land over said structure, or to land goods thereat, or to have a right of way over the same.

The plaintiff's reply denies defendants' affirmative defenses.

The case was heard by the court upon the issues presented, and

upon findings in favor of the plaintiff a final decree was signed by the judge on December 9, 1908, and filed with the clerk of the court on December 12, 1908, in which it was recited: That on the 16th of April, 1907, the United States government conveyed by patent a fee-simple title to Thomas J. Donohoe for that certain tract of land, on the shore line of Orca Inlet, Alaska, officially designated as United States survey No. 449, described in the decree by courses and distances, with the western boundary meandering the shore line of Orca Inlet; the tract containing 143.65 acres. That thereafter on the 24th day of February, 1908, said tract of land was conveyed to the plaintiff, save and except a tract of land containing 13.65 acres in the northwest corner of the tract described in the complaint. That the plaintiff had gone into possession of the land and premises, and on or about the 10th day of June, 1908, had commenced the erection of a wharf upon the high lands owned by him in fee, above the line of mean high tide, with the intention of continuing his wharf from the tide lands lying immediately in front of and abutting upon his said high lands to the deep waters of Orca Inlet. That on the 6th day of July, 1908, the defendants, without right and against the protest and objections of plaintiff, had gone upon the tide lands immediately in front of said wharf that was then being constructed by plaintiff, and between plaintiff's high lands, owned and possessed by him and between plaintiff's wharf, then partially constructed, and the deep waters of Orca Inlet, and commenced driving piles at the point marked on the plat attached to the decree "defendants' piling," and covering a space of tide lands with said piling and the structure erected thereon 68 feet wide by 130 feet long. That said piling was so constructed as to prevent plaintiff from completing his wharf to deep water of Orca Inlet, and was so constructed as to obstruct plaintiff in his ingress and egress to and from his high lands and the deep waters of Orca Inlet. It was thereupon adjudged and decreed that plaintiff by reason of being the owner of the high lands aforesaid was entitled to the possession, use, and occupancy of the shore lands lying in front of and between his said high lands and the deep waters of Orca Inlet, and was entitled to the possession and occupancy of the shore lands seized upon and then occupied by the defendants; and that said lands so occupied and in the possession of said defendants were necessary to the plaintiff for ingress and egress to and from said high lands and the deep waters of Orca Inlet.

It was further adjudged and decreed that the defendants had unlawfully gone upon said shore lands in front of the plaintiff's wharf, and that the defendants be restrained and enjoined from erecting pilings or other obstructions of any kind or nature whatever upon the shore lands of Orca Inlet in front of plaintiff's uplands and between plaintiff's uplands and the deep waters of Orca Inlet. The decree awarded costs in favor of the plaintiff.

From this final decree defendants appeal.

The appellee interposes objections to the bill of exceptions contained in the transcript of record on appeal: First, because it is not authenticated in any way by the judge before whom the case was tried; and, second, that the time within which the trial judge was

authorized to settle a bill of exceptions in the case had expired long before any step was taken by the appellants to present a bill of exceptions for settlement.

The procedure provided by law for the trial of issues in actions of an equitable nature in the courts of Alaska is found in chapter 39 of the "Act making further provision for a civil government for Alaska and for other purposes," approved June 6, 1900 (Act June 6, 1900, c. 786, 31 Stat. 321–395).

Section 372 of the act provides, among other things:

> "Exceptions may be taken during the trial to the ruling of the court and also to its findings of fact and a statement of such exceptions prepared and settled as in an action, and the same shall be filed with the clerk within ten days from the entering of the decree or such further time as the court may allow."

The procedure for the settlement of a bill of exceptions in an action is provided in chapter 21 of the same act. Section 223, contained in that chapter (31 Stat. 366) provides:

> "The statement of the exception when settled and allowed shall be signed by the judge and filed with the clerk and thereafter it shall be deemed and taken to be a part of the record of the cause."

The decree in this case was signed on December 9, 1908, and filed with the clerk of the court on December 12, 1908.

There is in the transcript of record what purports to be a "Record of Proceedings, Transcript of Testimony and Bill of Exceptions," to which is appended a certificate by the ex-official stenographer certifying to the correctness of the preceding 82 pages. Following this certificate as printed in the record is the following order signed by the judge:

> "The foregoing transcript filed on the 19th day of June, 1909, consisting of 82 pages, to which are attached all the exhibits of the respective parties, viz., plaintiff's Exhibits Nos. 1 to 7 inclusive, and defendants' Exhibit No. A, which transcript is duly certified by the ex-official stenographer of this court, contains all the testimony and evidence taken and produced at the trial of the cause considered by the court in rendering its decision and constituting part of this record in this cause and the exceptions therein set forth were duly taken, plaintiff's and defendants', and allowed by the court as they appear in said transcript. And it is hereby ordered that the said above transcript be and the same is hereby constituted a part of the record in this cause."

Following this order are the exhibits in the case and the minutes of the court for December 9, 1908, wherein it is recited that:

> "The court announced the fact that his decision would be for the plaintiff, and plaintiff's counsel was instructed to prepare findings of fact, conclusions of law, and a decree in said cause to be submitted to the court; that at the same time and place the court announced that when the findings of fact and conclusions of law and decree were determined by the court they would be signed nunc pro tunc as the 9th day of December, 1908, to which order defendants excepted and exception was allowed."

Then follows an order of the court allowing the defendants to amend their original answer by interlineation, alleging that the value of defendants' possessory right, title, and property was more than $1,-000, and the admission of a stipulation that the defendants would so testify. The order then proceeds:

"The court therefore being fully advised in premises, and having heard argument of all parties, announced his decision in favor of plaintiff without damages, and that an injunction issue herein as prayed, and thereupon an order was made in open court allowing 30 days within which to prepare and file the proposed findings of fact and conclusions of law for adoption by the court, and upon which judgment herein is to be based."

Then follow recitals of proceedings from which it appears that after the adjournment of the court on December 9, 1908, for the special October term of 1908, the judge, as he was about to depart for Fairbanks, signed plaintiff's proposed findings of fact and conclusions of law and the decree in the case; that such findings of fact, conclusions of law, and decree were filed in court on the 12th day of December, 1908. It appears elsewhere in the record that the findings of fact and conclusions of law prepared by plaintiff and filed in the action was served on defendants' counsel on December 12, 1908.

It is further recited that defendants on December 30, 1908, served plaintiff's counsel and filed in court their proposed findings of fact, conclusions of law, and objections and exceptions to plaintiff's findings of fact and conclusions of law. These are set out in full. Then follows a notice of a motion by the defendants filed January 5, 1909, to vacate the judgment so signed by the judge on December 9th, and filed on December 12, 1908, on the ground that the same was prematurely signed by the judge before a copy of the proposed findings of fact and conclusions of law in said cause had been served on the defendants' counsel and contrary to the provisions of the order made by the court on December 9, 1908, giving 30 days in which to make and file the proposed findings of fact and conclusions of law upon which the judgment or decree was to be based. To this notice is attached the affidavit of one of the attorneys for the defendants setting forth matters mainly outside of the record relating to the findings of fact and conclusions of law adopted and signed by the court. Reply affidavits of the attorneys for plaintiff are also in the record.

It appears that the motion to vacate the judgment was heard by the court on March 29, 1909, and denied, and at the same time the defendants were allowed 20 days to file a motion for a new trial and 90 days for preparing and settling exceptions and settling the record in the action.

On April 19, 1909, the court made an order, allowing certain findings of fact proposed by the defendants and disallowing defendants' objections to the findings of fact and conclusions of law which had been adopted and signed by the court on December 9, 1908. Thereafter and on the same day the defendants made a motion for a new trial on the ground, among others, of irregularity in the proceedings of the court in signing findings of fact and conclusions of law within and before the expiration of 30 days given by the court on December 9, 1908. The motion for a new trial was denied on June 16, 1909. Then follow recitals relating to the settlement of a bill of exceptions, in which plaintiff refused to appear, but reserved the right to object to the proceedings. Thereupon on June 19, 1909, the court entered an order settling the record preparatory to an appeal on the part of the defendants upon the presentation by the defendants of "what pur-

ports to be the transcript of all the testimony and evidence upon which said cause was tried and final judgment and decree herein was rendered, and the court upon examination finding that the foregoing transcript of testimony 'hereto attached' presented by the defendants, consisting of 210 numbered pages of typewritten and written matter and 3 maps, Exhibits 5, 6, 7, one of which has 3 pages of typewritten and written matter thereto attached, constitute a full, true, and correct copy and transcript of the testimony and evidence and all of the same upon which said cause was tried and the final judgment and decree rendered herein and a true and correct copy and transcript of the other proceedings in said cause therein set forth, that the objections and exceptions of defendants thereto and as therein allowed, and the court hereby orders that the said record, transcript, evidence, and exceptions be filed and made a part of the record of said cause in the office of the clerk in the above-entitled court, and the above and foregoing exceptions contained and set forth in said record and each of them are by the court allowed, and the same are hereby made a part of the record in said action."

The bill of exceptions as thus prepared and settled by the court was filed with the clerk of the court on June 19, 1909.

It thus appears that the record contains two orders of the court each allowing and settling a bill of exceptions. The first order refers to a record of 82 pages (to which are attached plaintiff's Exhibits Nos. 1 to 7 and defendants' Exhibit A) containing the testimony and evidence taken and produced at the trial. The second refers to a record of 210 pages of typewritten and written matter and 3 maps, Exhibits 5, 6, and 7. The first order settles a bill of exceptions containing the testimony and evidence prior to final decree; the second settling a bill of exceptions containing the testimony and evidence upon which the cause was tried and final judgment and decree rendered, and also the other proceedings in said cause subsequent to final decree. Both orders were signed by the judge on June 19, 1909; but neither bill of exceptions is signed by the judge.

The record of proceedings was filed with the clerk of the court on June 19, 1909. The second or last order of settlement of the record and allowance of exception was not filed with the clerk until June 28, 1909. The last order was therefore a separate and distinct document. The so-called "bill of exceptions" and the signature of the judge to the order did not constitute a signature to the bill of exceptions. The statute further required that the "exceptions prepared and settled as in an action" and signed by the judge "shall be filed with the clerk within ten days from the entering of the decree or such further time as the court may allow." These exceptions were not filed with the clerk until more than six months after the entering of the decree; but the appellants rely upon the order of March 29th allowing the defendants 90 days for preparing and settling exceptions. When that order was made, the time for filing exceptions had long since expired, and the court had then no authority to extend the time. Hack v. Nason, 190 Mass. 346, 76 N. E. 906; Mitchel v. State, 148 Ala. 662, 41 South. 518; Pieser et al. v. Minkota Milling Co., 222 Ill. 139, 78 N. E. 20.

In Dalton v. Gunnison, 165 Fed. 873, 91 C. C. A. 457, the question

was whether a delay in settling and signing a bill of exceptions until after the expiration of the time fixed for signing the same as extended, caused by the inability of the court stenographer to make a transcript of his notes of the evidence and exceptions within the time so extended, was an extraordinary circumstance within the exception to the rule that a bill not presented within such time cannot be signed thereafter. The action in that case was at law, with respect to which the procedure is governed by the provisions of chapter 21 of the Alaska Code of Civil Procedure. There is no provision in that Code, either in chapter 21 or elsewhere, prescribing any definite time within which a bill of exceptions must be settled and signed in an action at law. This court, accordingly, held that the delay in that case was caused by an extraordinary circumstance, which brought it within the exception to the general rule that the judge was without authority to sign the bill of exceptions after the expiration of the time fixed for that act. The law of that case has no application to the procedure in an action of an equitable nature where the statute fixes the time within which a bill of exceptions may be signed, and where even without the statute there is no extraordinary circumstance excusing the delay. The so-called bill of exceptions cannot therefore be considered on this appeal.

The motion to vacate the judgment filed January 5, 1909, was also without effect to suspend the running of time. The judgment had become final when filed with the clerk on December 12, 1908. If erroneous it was an error of law to be corrected on appeal. United States Bank v. Moss, 47 U. S. (6 How.) 31, 39, 12 L. Ed. 331; Bronson v. Schulten, 104 U. S. 410, 415, 26 L. Ed. 797. But appellants claim that the findings of fact and conclusions of law were filed prematurely; that they should not have been filed until 30 days from December 9, 1908. There is no such order in the record. The order of the court was the usual one, that the prevailing party—the plaintiff in this case—should prepare findings of fact and conclusions of law and a decree. It was further ordered that 30 days should be allowed to prepare such findings of fact and conclusions of law; but it appears the plaintiff did not require that time, and, as the judge had concluded the special term at Valdez and had adjourned the court for the term and was about to depart for Fairbanks, the plaintiff on the same day prepared and submitted to the judge proposed findings of fact and conclusions of law and also the form of a decree, all of which were adopted and signed by the judge as of that day and filed with the clerk of the court on December 12, 1908, and on this last-named date the findings of fact and conclusions of law were served upon the defendants and under the statute became the findings of fact, conclusions of law, and the final decree in the case. There was therefore no inadvertence, mistake, or accident in the entry of the decree, and if erroneous in law it devolved upon the defendants to proceed by appeal to correct the error. Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Phillips v. Negley, 117 U. S. 665, 674, 6 Sup. Ct. 901, 29 L. Ed. 1013; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 224, 10 Sup. Ct. 736, 34 L. Ed. 97; Hickman v. Ft. Scott, 141 U. S. 415, 12 Sup. Ct. 9, 35 L. Ed. 775; Wetmore v. Karrick, 205

U. S. 141, 151, 27 Sup. Ct. 434, 51 L. Ed. 745; Patch v. Wabash, 207 U. S. 277, 281, 28 Sup. Ct. 80, 52 L. Ed. 204.

The action of the court in allowing some of defendants' proposed findings of fact served and filed on December 30, 1908, and allowed on April 19, 1909, is immaterial. The order of court of December 9, 1908, did not call for such findings of fact, and the judgment or decree is sustained by the original findings of fact and conclusions of law.

The absence of a proper bill of exceptions leaves the case open for consideration upon the pleadings, findings of fact, conclusions of law, and decree under which the substantial merits of the case will be determined.

It is contended by the appellants that the appellee (plaintiff in the court below) had no capacity to maintain this suit; that the suit could only be brought in the names of the persons mentioned in the complaint and in the decree as beneficiaries of the trust upon which the property described in the complaint is held by the appellee. This is the general rule; but the present case is an exception. A trustee, who merely sues to reduce property to his possession or to protect his title as trustee without in any way affecting his relations with the cestui que trust, need not make the latter a party to the action. Carey v. Brown, 92 U. S. 171, 172, 23 L. Ed. 469; 1 Street, Fed. Equity Prac. § 512.

It is next contended that the plaintiff was not entitled to any relief for the reason that the land embraced in United States survey No. 449 was cut off by easements and rights of way from the shore of Orca Inlet, and that the plaintiff had therefore no littoral right as an incident to his ownership of the upland.

The court found as a fact that the plaintiff was the owner and in possession of the lands embraced in United States survey No. 449 on the shore of Orca Inlet described by courses and distances. The shore line is described "thence with the meanders along the shore line of Orca Inlet." The court further found:

"That on the 24th day of February, 1908, plaintiff as such trustee was and now is the owner in fee and in possession of all the upland or high land bordering on the shore of Orca Inlet."

The easements and rights of way referred to by appellant are those of the Copper River Railway as shown on a map attached to the complaint as an exhibit showing the town site of Cordova; but this map also shows that, while the line of the railroad crosses a portion of the tide flats in front of the town site of Cordova, there is a strip of upland owned by plaintiff lying between the line of the railroad's right of way and that portion of the shore in front of which the defendants' (appellants') wharf was being built at the time of the commencement of the action. The court found as a fact:

"That on or about the 10th day of June, 1908, said plaintiff, as such trustee, commenced the construction of a wharf upon the high land owned by him in fee, as hereinbefore described, above the line of mean high tide, at the point marked on plaintiff's 'Exhibit A' attached to plaintiff's complaint, with the intention of continuing said wharf over the tide lands lying immediately in front of and abutting upon his said high lands, to deep water of Orca Inlet."

The decree follows this finding of fact.

This we think establishes plaintiff's littoral right to the shore in front of his upland; but, in any event, whatever may be the fact about the line of this right of way, we are of the opinion that it is not of the character to cut off the littoral rights of the upland owner, in view of the law upon that subject as declared in Illinois Central R. R. Co. v. Illinois, 146 U. S. 387, 445, 463, 13 Sup. Ct. 110, 36 L. Ed. 1018.

It is next contended that plaintiff's littoral rights were cut off from the navigable waters in front of his upland by a reserve provided in section 10 of the act of May 14, 1898 (Act May 14, 1898, c. 299, 30 Stat. 409, 413 [U. S. Comp. St. 1901, pp. 1412, 1469]). This act extends the homestead laws and provides for right of way for railroads in the district of Alaska. Section 1, in extending the homestead laws to Alaska, provides:

"That no entry shall be allowed extending more than eighty rods along the shore of any navigable water and along such shore a space of at least eighty rods shall be reserved from entry between all such claims and that nothing herein contained shall be so construed as to authorize entries to be made or title to be acquired to the shore of any navigable waters within said district. And it is further provided that no homestead shall exceed eighty acres in extent."

Section 10 provides that citizens or corporations possessing and occupying public lands in Alaska for the purposes of trade, manufacture, or other productive industry may purchase one claim of not exceeding 80 acres, provided that no entry shall be allowed under the act on lands abutting on navigable waters of more than eighty rods. Then follows this reservation:

"Provided further that there shall be reserved by the United States a space of eighty rods in which between tracts sold or entered under the provisions of this act on lands abutting on any navigable stream, inlet, gulf, bay or seashore and that the Secretary of the Interior may grant the use of such reserved lands abutting on the water front to any citizen or association of citizens or to any corporation incorporated under the laws of the United States or under the laws of any state or territory for landings and wharves, with the provision that the public shall have access to and proper use of such wharves and landings at reasonable rates of toll to be prescribed by said Secretary and a roadway sixty feet in width paralled to the shore line as near as may be practicable shall be reserved for the use of the public as a highway."

The last clause above quoted refers to a roadway through the reserved lands previously described, and not through lands granted in fee simple under the homestead laws. Furthermore, the patent under which the appellee derived his title was not issued under the act of May 14, 1898, but under the act of March 3, 1903 (Act March 3, 1903, c. 1002, 32 Stat. 1028 [U. S. Comp. St. Supp. 1909, p. 549]), which amends the former act by limiting the extent of a homestead entry to 320 acres and provides:

"That no entry shall be allowed extending more than one hundred and sixty rods along the shore of any navigable water and along such shore a space of at least eighty rods shall be reserved from entry between all such claims."

It is further provided, as in the former act, that nothing "herein contained shall be so construed as to authorize entries to be made or title to be acquired to the shore of any navigable waters within said

district." The "shore" is that ground that is between ordinary high-water and low-water mark. Shively v. Bowlby, 152 U. S. 1–12, 14 Sup. Ct. 548, 38 L. Ed. 331. There is no provision in this statute reserving a roadway or making any other reserve above high-water mark through lands granted under the homestead laws. Furthermore, no such reserve is made in the patent. The patent is in the record, and, as previously stated, the land is described by courses and distances as containing the specific quantity of 163.65 acres. The lands granted are made subject to a reservation; but it is the reservation of a "right of way thereon for ditches and canals constructed by authority of the United States," thus excluding by implication, if that were necessary, a reservation under the act of May 14, 1898. It follows that plaintiff's littoral rights were not cut off either by the railroad right of way or by a supposed roadway under the latter act.

It is further contended that under the law of littoral ownership as it exists in the territory of Alaska the plaintiff has no cause of action against an occupant of tide flats in front of his upland. This contention is based upon the law of littoral ownership in a territory as declared by the Supreme Court in Shively v. Bowlby, 152 U. S. 58, 14 Sup. Ct. 570 (38 L. Ed. 331), where the court said:

"Grants by Congress of portions of the public lands within a territory to settlers thereon though bordering on or bounded by navigable waters convey of their own force no title or right below high-water mark, and do not impair the title and dominion of the future state when created, but leave the question of the use of the shores by the owners of uplands to the sovereign control of each state, subject only to the rights vested by the Constitution of the United States."

But the plaintiff in the present case does not claim any right or title to the soil below high-water mark; what he claims is free access to the navigable waters in front of his upland, which it appears is being obstructed by the defendant.

In Columbia Canning Company v. Hampton, 161 Fed. 64, 88 C. C. A. 224, the controversy related to the claim of the littoral owner to an exclusive right of driving piles for the purpose of a fish trap in front of his upland. Relief was denied in that case because it was not claimed that the defendants were obstructing the plaintiff's access to navigable waters; but the court said:

"The littoral right attached to plaintiff's homestead location entitled him to free access to the navigable waters of Lynn Canal." And "he may have a right of action against an intruder who places obstructions on the shore that prevent him from having access to navigable waters."

In Decker v. Pacific Coast Co., 164 Fed. 974, 91 C. C. A. 102, the action was to abate a nuisance in the erection and maintenance of buildings and a wharf between certain property belonging to plaintiff and the deep water in Gastineaux Channel at Juneau, Alaska. The court below dismissed the bill. This court held, as one of the grounds for affirming this decree, that the action could not be maintained unless it was alleged in the complaint and proven that the plaintiff was prevented by defendants' structure from having free access to navigable waters, and, as this did not appear upon the record, the action of the District Court in refusing an injunction was

upon this and other grounds affirmed. In the present case it is alleged in the complaint and was found as a fact by the court that defendants' structure "interferes with and obstructs plaintiff in the use and enjoyment of ingress and egress to and from his said high lands to the deep waters of Orca Inlet," and in the decree it is adjudged that defendants' structure "is so constructed as to interfere with and obstruct plaintiff in his ingress and egress to and from his said high lands and the deep waters of Orca Inlet."

We think that, under the facts stated, the plaintiff is entitled to be relieved against this obstruction; that, while in a territory a grant of land bordering on or bounded by navigable waters conveys to the grantee no right or title to the shore or soil below high-water mark, nevertheless such a grantee has the right to a free and unobstructed access to such waters. 1 Farnham on Waters, 297. But how shall the littoral owner have access to navigable waters where shoal water intervenes? The Supreme Court has answered this question in Dutton v. Strong, 66 U. S. (1 Black) 23–32, 17 L. Ed. 29, where the court said:

"Wherever the water of the shore, so to speak, is too shoal to be navigable, there is the same necessity for such erections as in the bays and arms of the sea; and where that necessity exists it is difficult to see any reason for denying to the adjacent owner the right to supply it; but the right must be understood as terminating at the point of navigability where the necessity for such erections ordinarily ceases."

The right of access by means of a wharf or other structure is also subject to the last proviso in section 2 of the act of May 14, 1898:

"That nothing in this act contained shall be construed as impairing in any degree the title of any state that may hereafter be erected out of said district or any part thereof to tide lands and beds of any of its navigable waters, or the right of such state to regulate the use thereof nor the right of the United States to resume possession of such lands, if being declared that all such rights shall continue to be held by the United States in trust for the people of any state or states which may hereafter be erected out of said district."

Subject to these limitations, the plaintiff has a right of access to navigable waters over his structure from the upland and to have this right protected by the court against obstruction. It follows that the District Court was right in entering a decree granting the injunction.

The decree of the District Court is therefore affirmed.