YOUNG v. TOWN OF JUNEAU et al.

(First Division. Juneau. May 12, 1911.)

No. 793A.

1. INDIANS (§ 15*)—LANDS—SALE.

When Act May 17, 1884, c. 53, 23 Stat. 24, was passed, an
Indian by the name of Yosh-noos, or Chief Johnson, was in
possession of a tract of land of 130 feet frontage along the shore
of Gastineau Channel at Juneau, Alaska, and was then and for
many years thereafter actually using and occupying the same.
On February 27, 1900, he conveyed his littoral and riparian
rights in front of the said upland to the plaintiff, who entered
on the tidelands and drove piles for a wharf. Subsequently the
town of Juneau drove piles and built a floating wharf upon what
plaintiff claims is a part of his tideland occupancy, and plain-
tiff brought suit to enjoin further encroachment upon his front-
age by the town. *Held*, that the Indian occupant had such a
possessory title to the tideland in front of his upland that he
could sell and convey, and that plaintiff acquired the exclu-
sive right, to use and occupy the tideland in front of the Indian's
upland by the purchase as fully as the Indian possessed the
right by his occupancy under the act of Congress.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29,
34, 37–44; Dec. Dig. § 15.*]

2. NAVIGABLE WATERS (§ 36*)—TIDELANDS—OWNERSHIP.

No one can acquire title to tidelands in Alaska, as they are
held in trust by the United States for the future state. Such
tidelands may be used for public roads or streets, unless such
use will cut off or obstruct the upland owner's access to the
navigable waters in front thereof.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig.
§§ 180–200; Dec. Dig. § 36.*]

3. NAVIGABLE WATERS (§ 43*)—RIPARIAN RIGHTS—WHARVES.

One who owns the littoral or riparian right in front of up-
land abutting on the seashore in Alaska is thereby authorized
to build wharves from the upland to deep water navigation for
the purpose of rendering his means of access more serviceable.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig.
§§ 104, 256–265; Dec. Dig. § 43.*]

4. NAVIGABLE WATERS (§ 43*)—WHARVES—TIDELANDS.

An upland owner may extend his wharf across tidelands to
deep water at right angles to his shore line, but may not deprive
other adjoining upland owners of an equal privilege.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig.
§§ 104, 256–265; Dec. Dig. § 43.*]

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

The complaint in this action, so far as the same is material for the determination of the rights of the parties hereto, alleges: That the defendant the town of Juneau is a municipal corporation, organized and existing under and by virtue of the laws of the district of Alaska. That all the other defendants, except the defendant Webster, are members of the common council of the said town of Juneau. That the defendant Webster is engaged in the business of driving piles. That at the time of the passage of the act of Congress, approved May 17, 1884, one Yosh-noos, an Indian, also known as Chief Johnson, was in the actual and exclusive possession of a certain tract of land bordering on Gastineau Channel, a navigable arm of the Pacific Ocean, in which the tide ebbs and flows, situate near the town of Juneau, district of Alaska, described as follows:

"Commencing at corner No. 1 of Juneau town site, as marked and designated on the official survey and map of said town site, running thence southeasterly along the shore of said Gastineau Channel 130 feet, more or less, making a frontage of 130 feet; thence northeasterly 150 feet, more or less; thence northwesterly and parallel with the shore line 130 feet; thence southwesterly to place of beginning."

That said tract of land has, ever since that last-mentioned date, been and now is in the possession of the said Yosh-noos and his successors in interest. That, while said Yosh-noos was so possessed of said land (that is to say, on the 27th day of February, 1900), he granted, conveyed, and quitclaimed to the plaintiff, C. W. Young, who was then doing business as the Juneau Storage Company, the littoral and shore rights appurtenant to aforesaid described tract of land, including the right to wharf out as well as all other rights held by the said Yosh-noos in and to the tidelands situate on the shore of said Gastineau Channel in front of said upland. That the plaintiff took the title to said rights in the name of the Juneau Storage Company, which was the plaintiff, no other person or persons having any interest therein; the same being merely the trade-name under which the plaintiff was then doing business. That thereafter, after the plaintiff had so become possessed of said tideland and had so acquired the right to wharf out over the same from the said Yosh-noos, the plain-

tiff commenced the erection of a wharf, extending the full distance of 130 feet in front of said upland, with the intention of constructing and extending and completing the erection of said wharf to deep water, and in carrying out this object and purpose the plaintiff did at great expense drive piles upon said tidelands and did take actual possession of the same for the uses and purposes above indicated. That thereafter, to wit, in the summer of 1909, the defendant the town of Juneau, did extend its float attached to a wharf belonging to it and situate a short distance above the said premises, which float was so extended and constructed as to extend in front of the improvements made by the plaintiff and in front of the upland owned and possessed by Yosh-noos and his successors in interest, as above described, for a distance of approximately 140 feet, all of which was done against the consent of the plaintiff and without right on the part of the defendant so to do. That the construction of said float, so constructed in front of plaintiff's improvements, prevents the plaintiff from exercising his right to wharf out and from completing his wharf, commenced as aforesaid, to deep water, and destroys the right of ingress and egress, as well as the right to wharf out attached to said upland owned and possessed by said Yosh-noos, which said right was conveyed to the plaintiff and is now the property of this plaintiff. The complaint further alleges that the plaintiff is in the possession of all of the tideland in front of the upland described in the complaint, excepting the portion which is in the possession of the defendant corporation.

All of the defendants, except the defendant Webster, answered the complaint and put in issue by their answer the allegations of the complaint herein above recited, and for further answer alleged, among other things, that heretofore, to wit, during and prior to the year 1909, the said town of Juneau, under the authority conferred upon it by the general laws of the district of Alaska, erected and became the owner of that certain wharf or dock on the water front of said town known as and called the "city dock," which said dock is situate a short distance to the southeast of the premises mentioned in the plaintiff's amended complaint, and which said dock abuts on

Franklin street, one of the streets of said town, and extends from said Franklin street out to deep water; that, from the point where said Franklin street connects with the approach of said wharf, the said street extends along the shore of the said Gastineau Channel and harbor of Juneau and connects with the main business part of said town; that in addition to the said dock or wharf for the accommodation of ocean going shipping, plying to and from the said port of Juneau, this defendant is also the owner and in possession of a float connected therewith and extending northwesterly from said dock a distance of about 120 feet, which said float was constructed for the accommodation of small vessels plying to and from said port of Juneau, and is a public necessity to the business and commerce of said municipality; that on or about the 21st day of January, 1910, the plaintiff herein filed his original complaint in this action and alleged, among other things, that the said town of Juneau and its common council were threatening to extend said float in front of the premises in the possession and ownership of the plaintiff; that said application was knowingly made and was intentionally false and was so made for the purpose of procuring a preliminary injunction herein; that in truth and in fact the said municipality was not intending, threatening, or purposing to make any such extension, and for that reason did not make any strenuous objection to the granting of such preliminary writ; that, at the time the said writ was granted, the Honorable E. E. Cushman, then presiding judge in this court, was about to depart for the Third division of the district of Alaska, leaving division No. 1 without a judge then here, the present presiding judge being then in the Fourth division of the district of Alaska, and not arriving in Juneau until more than a month thereafter; that the writ then granted by Honorable E. E. Cushman was intended to hold the matters in statu quo until the trial of this cause on the part of the plaintiff as well as the defendants, and expressly provided, among other things, that such injunctional writ should not be construed to interfere with or limit the possession and use of the property then in its possession by the town of Juneau; that notwithstanding the provision in

the writ as aforesaid, as soon as the said Honorable E. E. Cushman departed from this division, and before the arrival of the present presiding judge, the said plaintiff, by his agent, acting under color of said writ, wrongfully and without right proceeded to drive piling in and around the northwesterly face of said float, so as to completely shut off the approach of small craft to such face or to the inside or landward side of such float, thereby largely destroying the use thereof for the purposes for which it was constructed, and has deprived said defendant and the public of the use of more than one-half of said float; that the piling so driven by the plaintiff extends from the plaintiff's dock in a southeasterly direction towards said float a distance of 27 feet, and within about 3 feet of the end of said float, and is shown upon the plat attached to said answer and made a part thereof, marked "new piling"; that the plaintiff also drove piling between the piling last aforesaid and the shore, marked upon said plat as "new piling," the last or outward row of which also interferes with the free use and enjoyment by the public and the said defendant of a part of said float; that the purpose and object of the plaintiff and his agent in driving said piling in the month of July, 1910, aforesaid, was to injure, harass, and damage the said defendant the town of Juneau, and for no other purpose, and was wrongful and without right; that, at the time of the construction of the float aforesaid, the plaintiff made no protest against the same, set up no claim to any premises covered or affected by said wharf, and fully acquiesced in the construction of the same.

The plaintiff, replying to the answer of the defendants, denied all of the new matter therein contained, except that the defendant the town of Juneau is a municipal corporation.

J. A. Hellenthal, of Juneau, for plaintiff.

J. H. Cobb, of Juneau, for defendants.

LYONS, District Judge. The evidence establishes the following state of facts: Some time in 1883 Yosh-noos, or Chief Johnson, settled upon and took possession of the premises described in the complaint. The evidence is not entirely satisfac-

tory as to the original boundaries of the Johnson holding, but it satisfactorily appears from the evidence that he claimed 130 feet frontage, commencing at corner No. 1 of the town site of Juneau and extending in a southeasterly direction along the meander line of Gastineau Channel. It further appears that Johnson occupied and actually resided on the property from 1883 until long subsequent to February 27, 1900, when he transferred his littoral and riparian rights appurtenant to said upland to the plaintiff herein. In 1905 the plaintiff herein drove piles along the tideland in front of said upland, but did not continue the driving of piles sufficiently to reach deep water, except one row of piling driven on what plaintiff evidently considered the northwesterly side line of his littoral rights. Nothing further was done by the plaintiff with reference to building a wharf or occupying the said premises until about the time of the commencement of this action. The defendant the town of Juneau extended its city float to its present proportions in the summer of 1909.

This action was begun the summer of 1910, and a restraining order issued against the defendants enjoining them from further extending their float in a northeasterly direction or towards the frontage claimed by the plaintiff. After the commencement of this action, the plaintiff constructed his present wharf, which is shown on Plaintiff's Exhibit A. The evidence further shows that there is a street or roadway along the tideland in front of the Johnson property, which street or roadway has been used by the public for some years, but for how many years does not appear, in going to and from the principal part of the town of Juneau to and from the city dock, sawmill, and other places to the southeast of Juneau.

The plaintiff contends: First, that Yosh-noos, or Chief Johnson, was in possession of the property described in the complaint on May 17, 1884, and by virtue of section 8 of an act of Congress, approved on said date (23 Stat. 24), a person in possession of lands bordering on navigable water in Alaska on that date enjoys the same littoral and riparian rights as though he held patent to said land from the United States; second, that the conveyance of the littoral and riparian rights

by Chief Johnson to the plaintiff herein is a valid con-
veyance, and that the upland owner may sever his littoral
rights from his upland and convey the same to another, who
under such conveyance enjoys the same littoral and riparian
rights as his grantor did prior to the conveyance; third, that
the plaintiff, being the owner of the littoral and riparian rights
incident to said upland, has the right of access to deep water
navigation as well as the right to wharf out from the upland
to deep water and to invoke the power of equity to restrain by
injunction those who would prevent his access to deep water
navigation; fourth, that the plaintiff and one Goldstein have
agreed upon the southeasterly side line of the plaintiff's hold-
ings under his conveyance from Johnson, and that said side
line includes about 24 feet off of the northwesterly end of the
said city float, and the court therefore should issue a manda-
tory injunction restraining the defendant the town of Juneau
from maintaining such portion of said float.

The defendant the town of Juneau contends that, under the
evidence, Chief Johnson had no littoral or riparian rights
which he could convey to the plaintiff, and that the plaintiff
acquired none by his deed from Johnson; second, that, if the
plaintiff ever did acquire any such rights, the same were lost
to the plaintiff by his permitting the public to use the ground
as a street in front of the Johnson upland; third, that, even if
plaintiff has any littoral or riparian rights in front of the up-
land described in the complaint, he has no such rights that he
can assert against the defendant the town of Juneau, for the
reason that he knowingly permitted the defendant the town of
Juneau to construct its said float and maintain the same for a
year prior to the commencement of this action or prior to any
notice given by the plaintiff to the city of his claim to the prop-
erty in controversy.

Referring now to plaintiff's first contention, the evidence
warrants the conclusion that Johnson was in possession of the
upland described in the complaint on May 17, 1884, and by
virtue of section 8 of an act of Congress approved May 17,
1884 (23 Stat. 24), which provides, among other things:

"That the Indians, or other persons in said district shall not be
disturbed in the possession of any lands actually in their use or

occupation or now claimed by them but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress"—

should be protected in such possession until future legislation enables him to procure patent.

It may be contended that, Congress having extended some of the general land laws to the district of Alaska, the legislation referred to in the section of the statute just quoted has been enacted; but the act expressly protects all persons occupying or claiming lands at the time of the passage of the act, and it would seem that specific legislation would be necessary in order to fully protect persons in possession of lands at that time, for the reason that it might be impossible, under any general legislation of Congress regarding public lands, to procure patent to such lands. This matter is fully discussed in the case of Heckman v. Sutter, 128 Fed. 393, 63 C. C. A. 135, wherein the court held that the protective feature of the act with reference to those then in possession of lands in Alaska applied as well to shore lands as to uplands.

The evidence satisfactorily shows, on the date of the passage of the act referred to, Chief Johnson was in possession of the upland described in the complaint and claimed the same, and that he and his successors in interest continued to occupy and claim the same until after the plaintiff acquired by deed his littoral and riparian rights from Johnson.

"Citizens of the United States claiming, in good faith, upland in Alaska, and in actual occupation and possession thereof, take the same littoral rights as are incident to ownership in fee." Lewis v. Johnson (D. C.) 76 Fed. 476; opinion on merits of cause reported in 1 Alaska, 529.

It may be contended that Johnson was not a citizen, but, under the language of the act of Congress quoted, Indians and all other persons in possession of lands at the date of the passage of the act are protected by virtue of the act in such possession, and they or their successors in interest will be entitled to patent from the United States upon the enactment of such legislation as is contemplated by the act. It therefore follows that the plaintiff enjoyed the same littoral and riparian rights

appurtenant to the upland described in the complaint as if he held patent to said land from the United States.

The second contention of the plaintiff is sustained by our Appellate Court in the case of Decker v. Pacific Steamship Co., 164 Fed. 974, 91 C. C. A. 102, wherein the court, among other things, said:

"If the littoral owner can dedicate or convey to the public his right of access to the navigable waters in front of his premises, he can convey that right to an individual or to a corporation for the purpose of enabling such individual or corporation to erect or maintain a wharf for the benefit of commerce and navigation. The law of that case is applicable here, and we are of opinion that, whatever appellant's rights may have been as the owner of the land abutting on navigable waters, she parted with such rights in the deed of February 20, 1897; that the appellee's lessor has succeeded to such rights; and the appellant cannot, upon the facts in this case, maintain this action to abate the wharf and buildings occupied by the appellant as a nuisance."

Under the ruling of the court last cited, it follows that the plaintiff acquired by deed of February 27, 1900, all the littoral and riparian rights of Yosh-noos, or Chief Johnson, appurtenant to the property described in plaintiff's complaint. But the defendants contend that, even though the plaintiff did acquire the littoral rights, he lost the same by permitting the public to use a portion of the shore as a street or public way; and counsel for the defendants in the oral argument referred to the case of McCloskey v. Pacific Coast Co., 160 Fed. 794, 87 C. C. A. 568, 22 L. R. A. (N. S.) 673. But the facts in that case disclose an entirely different situation to the one in the case at bar. In that case the court found that there was a narrow strip of upland, five feet wide, between the upland owner's property and the shore line. The court further found that the upland owner had dedicated a street for public use in front of his upland, and that such dedication and the narrow strip of upland between the shore line and the appellee's upland cut off appellee's right of access to deep water navigation and deprived appellee of any littoral or riparian rights. But there is no reason why the mere usage on the part of the public of a portion of the shore as a public way in front of the upland owner will cut off the littoral or riparian rights of such owner.

His holdings still extend to medium high-water mark. No one càn acquire title to tidelands in Alaska, as they are held in trust by the United States for the future state, and when not actually occupied they may be used for roads or streets by the public, even against the wishes of the upland owner, unless such streets or roadways would cut off or obstruct the upland owner's access to deep water navigation. If it were true that the mere usage of the tidelands by the public for a roadway or street would cut off the littoral and riparian rights of the upland owner, without any evidence of dedication on his part, such rights would be very unstable and insecure in this section of the district of Alaska, where frequently the most feasible places to lay out and construct roads are on the shore. This same question was passed upon by this court in the case of Young v. Fitzgerald et al., 4 Alaska, 52, wherein the court said:

"The plank road used by the public it was shown extends along over the shore in front of defendant's store building. It is an extension of the plank road mentioned in the decision of McCloskey v. Pacific Coast Co., 160 Fed. 794, at 799 et seq. [87 C. C. A. 568, 22 L. R. A. (N. S.) 673]; but as shown by the evidence, including the photograph exhibit in this case, this portion of the road is beyond the Murray Carroll wharf mentioned in that decision; that is, to the south, away from the main town of Juneau. There was no evidence introduced as to how long this road had been used by the public, nor evidence of any express grant to the public by the defendant or her grantor, or any evidence whatever that they had ever been divested of any littoral right."

See, also, Illinois Central R. R. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018; Succession of Delachaise v. R. MaGinnis, 44 La. Ann. 1043, 11 South. 715.

With reference to plaintiff's third contention, it follows, from what has heretofore been said, that the plaintiff has a right of access from the Johnson upland to the navigable waters of Gastineau Channel, and a court of equity will protect such right of access by injunction. Such right of access authorizes the upland owner to build wharves from his upland to deep water navigation for the purpose of rendering his means of access more serviceable. Dutton v. Strong, 66 U. S. (1

Black) 23, 17 L. Ed. 29; Dalton v. Hazelet, 182 Fed. 561, 105 C. C. A. 99.

With reference to plaintiff's fourth contention, it is obvious that the same is not tenable. While it is true there is some evidence that he and Goldstein, who is shown to be occupying a small piece of tideland to the southeast of plaintiff's holdings, entered into some agreement concerning the dividing line between their respective holdings, but there is no evidence to show that Goldstein is the owner of any upland abutting on the tideland which he is occupying; consequently there is nothing to warrant the inference that Goldstein had any authority or power to agree with the plaintiff upon any line which would affect any premises in that vicinity that Goldstein did not actually occupy. A mere squatter on tidelands may hold the same against any intruder, but he can claim only such land as he actually occupies. Such possession or occupancy gives him no littoral or riparian rights. It follows, therefore, that any agreement between Goldstein and the plaintiff, so far as the facts as disclosed by this record are concerned, could not in any way extend the littoral rights of the plaintiff as against the defendants, or any of them. The plaintiff, therefore, must rely in this case exclusively on the littoral and riparian rights which he acquired from Johnson.

But the serious questions to determine in this case are: First, what is meant by right of access; and, second, how is the scope of plaintiff's littoral rights to be determined, in view of the fact that he claims the meander line of Gastineau Channel is curved at both points where the side lines of the Johnson property intersect the meander line of Gastineau Channel? Our Appellate Court in Decker v. Pacific Coast Steamship Co., supra, has clearly explained what is meant by right of access to deep water, by the following language:

"This is the general rule, and is designed to keep navigable waters free and open to the public for commerce and navigation, and at the same time permit the littoral owner and those engaged in commerce and navigation to have access to navigable waters; but it cannot be ascertained from the allegations of the complaint in this case, nor does it appear in evidence, in what manner the maintenance of the buildings and wharf by the appellee in front of ap-

pellant's premises prevents her from having access to the navigable waters of Gastineau Channel. The presumption is that such access would be facilitated, rather than obstructed, by the maintenance of the wharf and other suitable structures for the accommodation of the public in the discharge and shipment of passengers and merchandise arriving and departing by water at the port of Juneau."

The language quoted clearly states that not every structure which may be erected in front of the upland owner will be considered as cutting off his right of access to deep water navigation. As said by the court, the erection of a wharf, unless the contrary appears, would seem to facilitate the upland owner's access to deep water; and unless the plaintiff shows that any structure erected by the defendants prevents him from reaching navigable water, either by wharf or otherwise, he cannot be heard in a court of equity to complain of such structure. In this case the plaintiff claims that he did intend to erect a wharf at the time he purchased from the upland owner, and that he claimed the same littoral rights which he now claims. However that may be, the exhibit which he has offered in evidence indicates that he claims much more frontage than he is entitled to under the law, even if he were in a position to claim all the advantages of the convex character of the shore line. The evidence shows that he drove one row of piles along what he conceived to be his northwesterly boundary, which row of piles is on the prolongation of the side line of the Johnson upland property. If that were his northwesterly boundary line, the prolongation of the southeasterly side line of the Johnson upland should be the southeasterly side line of his holdings. During the oral argument the court was under the impression that there was no evidence showing the extent of the convexity of the shore line in front of the Johnson property, and for that reason it would appear that it might become necessary for the court to hold that the plaintiff's littoral rights would be confined within the extension of the side lines of the Johnson upland, but Plaintiff's Exhibit A shows the direction of medium high tide line in front of Johnson's upland. The direction of the side lines on the upland does not necessarily determine the course of the side lines of the flats, and particularly is this true where the evidence shows the direction

of the medium high tide line with such exactness as to enable
the court to apportion the littoral rights equitably between the
upland owners.   Curtis v. Francis, 9 Cush. (Mass.) 427 ; Piper
v. Richardson, 9 Metc. (Mass.) 158.

"An upland owner may extend his wharf across tidelands to deep
water at right angles to his shore line, but may not deprive other
upland owners of an equal privilege." Martin v. Heckman, 1 Alaska,
165.

"When the irregularities or curvature of the shore are such that
lines cannot be drawn at right angles to the shore," so as to author-
ize a direct course over intervening shallows to construct piers or
other structures, connecting the shore with the point of navigability,
"then the whole cove is to be treated as a unit of the shore line
by drawing such vertical lines from its two boundary points or
headlands to the line of navigability, and then apportioning the
whole intervening boundary line of navigable water to the whole
shore line of the cove between such headlands, and by drawing
straight lines from the two termini of navigable water line to the
respective termini of shore line pertaining to each owner." Thomas
v. Ashland, etc., R. Co., 122 Wis. 519, 100 N. W. 993, 106 Am. St.
Rep. 1000; Northern Pine Land Co. v. Bigelow, 84 Wis. 157, 54 N.
W. 496, 21 L. R. A. 776.

"But the dominant rule is that each riparian owner must have his
due proportion of the line bounding navigability and a course of ac-
cess to it from the shore, exclusive of every other owner, and that
all rules for apportionment or division are subject to such modifica-
tion as may be necessary to accomplish substantially this result."
Thomas v. Ashland, etc., R. Co., supra; Northern Pine Land Co.
v. Bigelow, supra ; 29 Cyc. 346, 347.

Ordinarily the littoral rights of the upland owner are con-
fined within lines drawn from the shore corners of his upland
holdings at right angles to the meander line.   But the plaintiff
claims that, owing to the convex character of the shore line,
he is entitled to a greater width on the line of navigability than
the width of his inshore line, to wit, 130 feet, and for that rea-
son he claims that, instead of extending a line seaward at right
angles from his southeasterly corner, his southeasterly line
should bisect the angle of the meander line at his southeasterly
corner.   Such contention would probably be true if there were
no other facts and circumstances to guide the court in deter-
mining the rights of the parties in this action.   It is evident,
from an examination of Plaintiff's Exhibit A, that he did not
take such a position at the time he drove his piles along what

he evidently considered the northwesterly side line of his holdings, nor did he take that view of his holdings when he permitted the defendant the town of Juneau to erect its float in its present position and maintain the same without making any protest whatever until the commencement of this action, which was about a year after the construction of such float; nor does it appear from the evidence that the maintenance of the city float in its present position cuts off the plaintiff's right of access in any respect from deep water. It is true plaintiff did offer some testimony to show that he preferred to extend his wharf some distance in a southeasterly direction, and was prevented from so doing on account of the presence of the defendant's float; but such evidence is contradicted and overcome by the actions of the plaintiff in bounding in the first instance his northwesterly side line as well as permitting the defendant the town of Juneau to erect and maintain its float for such a period without making any protest against its erection and maintenance. It would seem, therefore, that the just and equitable rule to adopt in this case is to provide that a line drawn from the southeasterly corner of plaintiff's holdings at right angles to that portion of the meander line of Gastineau Channel in front of the Johnson property shall constitute the southeasterly side line of plaintiff's holdings. Plaintiff's Exhibit A shows that the meander line of Gastineau Channel, commencing at corner No. 1 of the town of Juneau, extends for 130 feet in a direction south 35° east. The establishment of plaintiff's southeasterly side line by the drawing of such a line will include all of the plaintiff's wharf but no portion of the city float. Plaintiff contends that his southeasterly side line should bisect the angle of the meander line of Gastineau Channel at the southeasterly corner of his holdings, and that the line bisecting said angle extended towards deep water should be his southeasterly side line. As before stated, such contention might be tenable if the plaintiff's boundaries, as heretofore established by himself, were consistent with such a theory of the locus of his littoral rights and if he had taken the proper steps timely to prevent the defendant the town of Juneau from extending its float northeasterly of such a line,

4 A.R.—25

and if it were further shown that he actually required the space between such a line and the line already indicated for the purpose of reaching deep water or for the purpose of completing his wharf. The evidence shows that plaintiff has ample opportunity for reaching deep water with sufficient wharfage facilities between lines drawn at right angles to the meander line in front of the Johnson upland from the northwesterly and southeasterly corners of his inshore line.

The allegations of the complaint with reference to the intention on the part of the defendants, and particularly the defendant the town of Juneau, to extend its float in a northwesterly direction and in front of plaintiff's holdings are not sustained by the evidence. For that reason, as well as the other reasons heretofore assigned, there is no necessity or justification for the continuance of an injunction, and therefore the temporary restraining order heretofore issued must be dissolved; and the injunction prayed for by the defendants, preventing the maintenance of the southerly portion of the plaintiff's wharf, should also be denied, as the evidence shows that the plaintiff's wharf is within the boundaries of his littoral rights.

How may the littoral owner appropriate or profit by his right of access to navigable water, where shallow water intervenes between his upland holdings and the line of navigability? It is obvious that such right of access would be worthless, unless the upland owner were permitted to build wharves or piers enabling him to reach deep water. In re Dutton v. Strong, 66 U. S. (1 Black) 23, (17 L. Ed. 29) the Supreme Court of the United States said:

"Wherever the water of the shore, so to speak, is too shoal to be navigable, there is the same necessity for such erections as in the bays and arms of the sea; and, where that necessity exists, it is difficult to see any reason for denying to the adjacent owner the right to supply it; but the right must be understood as terminating at the point of navigability, where the necessity for such erections ordinarily ceases."

See, also, Dalton v. Hazelett, 182 Fed. 561, 105 C. C. A. 99.

Let findings of fact, conclusions of law, and decree be entered in accordance herewith.